Plaintiff, Mrs. Pearson, being the owner of the property in controversy, known as the Farmers Warehouse, in Asheville, N.C. together with her husband, Richmond Pearson, on 19 December, 1901, leased it to defendant Millard and H. W. Lasater, his copartner, for the term of five years, at a rental of $60 a month, the term to begin 3 July, 1902. The lease contained a number of provisions, none of which are necessary to be set out, except the following: "It is understood and agreed between the parties hereto that the parties of the first part, for and in consideration of the covenants and agreements herein contained, to be performed by the parties of the second part, hereby agree and covenant to and with said parties of the second part that they shall have an option of purchasing the property hereby conveyed on or before the third day of July, 1907, at the price of $9,000, payable $1,000 cash on consummation of trade and the balance in four annual installments of $2,000 each, the deferred payments to draw six per cent semiannual interest from the date of such consummation, as aforesaid, and to be represented by four promissory notes, of denominations aforesaid, duly *Page 250 
secured by deed of trust, to provide that the parties of the second part shall pay all taxes and assessments for and on account of said (305) property within the time and as prescribed by law, to keep the property in good condition and repair and to keep the same insured. . . . But it is expressly agreed and understood that this option to purchase, as hereinbefore stated, does not mean that the parties of the second part herein shall have the sole and exclusive right of purchase, but that they shall have the refusal or preference of right of purchasing on terms herein stated, and their failure to accept the same on those terms, when offered to them, shall give the parties of the first part a perfect and complete right to make sale of same to any other party on such terms as they may see fit," etc.
This lease was executed by all of the parties, Mrs. Pearson complying with the statutory provisions required for the execution of a deed.
On 2 October, 1903, Lasater, having sold and assigned all of his interest in the livery business, in which the firm were engaged, to defendant Millard, executed to him an assignment of his interest in the lease and option. This assignment was introduced over plaintiffs' objection and subject to their exception. Mr. and Mrs. Pearson resided abroad, the former being United States Minister to Persia. Mr. Whitson was Mrs. Pearson's agent for the collection of rent. On 28 May, 1906, plaintiffs instituted this action for the recovery of possession of the property, alleging that by the failure of defendant to perform certain covenants in the lease he had forfeited his term. Defendant set up the lease and alleged that he had performed all of the covenants and exercised his option to purchase the property by notifying plaintiffs' agent, tendering the cash payment, and that he was ready and willing to perform all of the other conditions of the option. Plaintiffs replied, and, upon issues submitted, the jury found the following facts: That defendant, during the month of December, 1905, notified Mr. Whitson of his purpose to purchase the property under the terms of the contract; that Mr. Whitson was the authorized agent of the plaintiffs, with power to accept or reject the offer; that defendant tendered the amount of $1,000 and was able to pay same; that the rent was not in arrears at that time; that defendant had not failed to comply with the condition of the lease in regard to repairs; that he was not in the wrongful (306) possession of the property; that plaintiff was not entitled to recover any amount for rent or damages; that Lasater assigned his interest in the option to defendant prior to 1 January, 1906; that defendant owed the plaintiffs on account of purchase money for the property $9,000, with interest from 3 January, 1906, the date of the tender. Upon this verdict his Honor rendered judgment that, upon the payment to plaintiff, Mrs. Pearson, by defendant, or by payment into the *Page 251 
clerk's office of $9,000, with interest from 3 January, 1906, plaintiffs execute and deliver to defendant a good and sufficient deed for the property; and if they failed to do so the judgment should operate as a conveyance in accordance with the provisions of the statute. The plaintiffs, having noted exceptions to his Honor's rulings, excepted to the judgment and appealed.
Plaintiffs except and assign as error his Honor's refusal to submit the issue, "Did defendant offer to comply with all of the conditions of the written contract mentioned in the pleadings, as alleged in the answer?" His Honor submitted separate issues directed to the several conditions in the lease, and this, we think, was proper. Every controverted question of the fact was settled by the verdict upon the issues submitted. The exception can not be sustained.
Plaintiffs assign as error the admission of the assignment by Lasater to defendant. It was certainly relevant and competent. Its admission did not affect its effect upon the rights of the parties, but was necessary to enable the court to pass upon that question. We are unable to perceive how it could prejudice the plaintiffs.
The next assignment of error is in the admission of Mr. Pearson's letter of 23 February, 1906, to Mr. Whitson. This letter was written from Teheran, Persia, in response to the letter notifying plaintiffs that defendant had accepted the option and was ready to make the purchase "under its terms." Mrs. Pearson insists that Mr. Pearson was not her agent, and that she was not bound by his letter. Conceding this to be true, we do not see how the letter affected her rights. Mr. Pearson simply placed his construction upon the option, (307) which, if correct, deprived defendant of any right under it. He insists that the option entitled the lessees to purchase, provided no one else would give more, and said that he had been offered a larger price. There is no suggestion that the acceptance was not in accordance with its terms, but that, under the terms, defendant had no right to call for a deed. Certainly there is nothing in the letter prejudicial to Mrs. Pearson. There was some evidence that Mr. Pearson was her agent. In any point of view, there is no prejudicial error in his Honor's ruling. The jury having found that none of the conditions in the lease — payment of rent and for repairs — had been broken, and having further found that Mr. Whitson was the authorized agent of the plaintiff, with power to accept or reject the offer made by defendant, and that he was notified of the acceptance by defendant, and the cash payment of *Page 252 
$1,000 was tendered within the time fixed in the lease, we are brought to a consideration of the pivotal questions argued by counsel.
The option was simply an offer by plaintiffs to permit the lessees to purchase upon the terms stated, "on or before 3 July, 1907." Until accepted by the lessees, it was a unilateral contract, binding only the lessors. We had occasion to consider the subject in Trogden v. Williams,144 N.C. 192, and examined the authorities bearing upon the relative rights and duties of the parties to a contract of this character. The option was in this case based upon a sufficient consideration, "When an option is given the lessee to purchase the leased premises, the lease is a sufficient consideration to support the option, and the lessor can not withdraw it before the time in which to accept it has expired."Tilton v. Coal Co., 28 (Utah), 173. "The doctrine of the earlier English and American cases, in which it is held that the want of mutuality of obligations and remedy would render the contract incapable of specific enforcement, has, by the more modern cases, been so modified that optional agreements to convey, without any corresponding obligation or covenant to purchase, will now be specifically enforced in equity, if made upon sufficient and valuable consideration; and so, when the agreement to convey is a part of a lease, or other contract between the (308) parties, for which the agreement to convey forms the true consideration, the want of mutuality will not avoid the contract."Hayes v. O'Brien, 149 Ill. 403; 23 L.R.A., 555. "Such a contract is a continuing obligation on the part of the lessor, running with the lease, which the lessee may accept at his option, within the time limited."Ibid. Until accepted, it is an offer of the lessor; but as said by Mr.Justice Field (Willard v. Tayloe, 8 Wall., 557), by notice of the acceptance "a contract of sale is completed." The contract becomes bilateral, binding both parties. Trogden v. Williams, supra. It is, of course, elementary, and sustained by a uniform current of authorities that, as in any other proposition to sell, the acceptance must be in accordance with the terms of the option, that is, unconditional. Weaverv. Burr, 31 W. Va. 736; 3 L.R.A., 94; Smelting Co. v. Belden Co.,127 U.S. 379; Kelsey v. Crowther, 162 U.S. 404; Trogden v. Williams,supra.
Was the acceptance by defendant unconditional and in accordance with the terms of the contract? Mr. Whitson said that defendant's exact words were: "That he wanted to avail himself of the right to purchase under his contract with Mr. Pearson, and that he was ready to pay me the $1,000 on the purchase price." Defendant says that he notified Whitson that "he was going to pay under the option, and wanted Whitson to write for the deed." The jury finds that the defendant notified Whitson that "it was his purpose to purchase the *Page 253 
property under the terms of the contract," and Mr. Whitson says that he wrote plaintiff, or, rather Mr. Pearson, of the acceptance; he further says he supposes that Mrs. Pearson was in Persia, with her husband, who was resident Minister at Teheran. There is no suggestion in the testimony that any condition was attached to the acceptance. Excluding Mr. Pearson's letter as not binding on Mrs. Pearson, she makes no response whatever to the notice. If we consider the letter as the response of her agent, no suggestion is made that the acceptance is not in accordance with the terms of the option; but an entirely different reason is assigned for refusing to make the deed, that he has been offered a larger price and is under no obligation, by the terms of the option, to convey. Rejecting this construction, what duty devolved upon the plaintiffs upon receipt of the notice of acceptance of the option? Clearly, to accept the $1,000 cash and prepare a deed to (309) Millard Lasater, and tender it; whereupon it was their duty to prepare and tender notes and a trust deed for the balance of the purchase money. At the time of the notice of acceptance by defendant nothing was said about any assignment by Lasater. As is said by Mr.Justice Field, in Willard v. Tayloe, 8 Wall., 557 (75 U.S.), "Until the purchase money was accepted, there was no occasion to prepare any instrument for execution. So long as that was refused, the preparation of a trust deed was a work of supererogation. Besides, the execution of the trust deed by the complainant was to be simultaneous with the execution of the conveyance by the defendant. The two were to be concurrent acts; and if the complainant were to prepare one of them, the defendant was to prepare the other, and it is not pretended that the defendant acted in the matter at all." In that case the bill was filed by the purchaser. Here the purchaser, defendant, is asserting his right by way of equitable counterclaim. The plaintiffs, either by silence or Mr. Pearson's letter, refused to comply with their duty under the contract, and, of course, defendant could take no further step in the transaction. If plaintiffs had prepared and tendered a deed to Millard Lasater and demanded their notes and trust deed pursuant to the terms of the contract, it may well be that Lasater would have joined Millard in their execution, or Millard may have paid the entire purchase price in cash. It would be neither just nor equitable to permit plaintiffs to repudiate their obligations, absolutely, at the inception of the transaction, and thereby prevent the defendant from complying further with his offer to accept the terms of the contract and thereby destroy his rights. There is nothing in the evidence to justify plaintiffs' refusal to accept the cash and tender the deed, "under the terms of the contract," as made by them. But the learned counsel insists that the acceptance by defendant was for himself alone, and not for Millard Lasater, and that, thus *Page 254 
construed, plaintiffs were under no obligation to convey to him and accept his notes and trust deed; that they contracted with both partners and were entitled to demand strict performance of the contract. It is undoubtedly true, as contended by plaintiffs, that when a person enters into a contract with another, involving personal services or (310) personal confidence, the contract can not be assigned, so as to bring one of the parties into contract relations with a stranger. "Contracts involving the relation of personal confidence, and such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided, are not transferable." 4 Cyc., 22. It seems to be well settled that "when a lease contains an agreement that the lessee may purchase the land during the continuance of the lease, the assignment of the lease conveys to and vests in the assignee the same right." Menger v. Ward,87 Tex. 622, 853. It would seem, therefore, that by Lasater's assignment the defendant was entitled to the benefit of his interest in the option — that is, by complying with its terms, to call for the conveyance.
The only element of personal confidence involved in the option was that both Millard and Lasater were to execute their notes for the balance of the purchase money. As we have seen, the acceptance by defendant was "under the terms of the option." There was no suggestion that Lasater was not to sign the notes. In Menger v. Ward, 87 Tex. 62, relied upon by plaintiffs, the option, superadded to the lease, gave the right to the lessee to purchase the property by paying a part of the purchase price cash and giving his notes for balance. The lessee mortgage his term. One of the questions involved in the litigation was whether the mortgage of the leasehold property carried the option. The court held that, as credit was given for a part of the purchase price, the option did not pass by the mortgage. This decision was based upon the principle that the lessor could not be compelled to accept a stranger as his debtor, and was unquestionably correct. In the case before us no new party is attempted to be brought into the contract, but one of them "drops out" by assigning his interest to his copartner. The assignment of his interest, of course, made no change in the right of the plaintiffs to have the contract accepted and executed according to its terms, but they made no such claim or demand. There is no evidence showing or tending to show that Lasater would not, as in good faith he should have done to make his assignment effectual, have joined in the notes and trust deed. The acceptance having been made in good faith, according to the terms of the contract, we can see no reason why defendant was not entitled to have had an (311) opportunity to either give the notes to Lasater or, as his Honor has directed, pay the full amount of the purchase money down. *Page 255 
A court of equity looks to the substance of the thing; and while it will not vary the terms of the contract or deprive the plaintiffs of any of their legal rights, after the option by acceptance has been merged into a contract, it will guard the rights of both parties and make them do equity. The only element of personal confidence involved in the contract was that the lessors were to have four years' credit. If this is waived and the amount is paid in cash, how can the plaintiffs complain? If they desired the notes, they should have put themselves in an attitude to call for them by tendering the deed; this they refused to do. "A party does not forfeit his right to the interposition of a court of equity to enforce specific performance of a contract if he, reasonably and in good faith, offers to comply and continues ready to comply with its stipulations on his part, although he may err in estimating the extent of his obligation." Willard v.Tayloe, supra. While, as consistently held by this and all other courts administering equitable rights and remedies, specific performance is not a matter of absolute right, yet it will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice and work no hardship upon the party who has entered into the contract.
Upon a review of the entire evidence and the verdict of the jury, we think that defendant has acted in entire good faith and is entitled to the relief granted by his Honor. Plaintiffs are not required to enter into any contract with a stranger or to release any security to which they were entitled under the contract. They agreed to sell the property for $9,000 if accepted on or before 2 July, 1907. Only $1,000 was to be paid cash, and credit of four years was given for the balance. The option was accepted more than a year before the time fixed, and they, without assigning any valid reason, rejected it. They receive, under the provisions of the judgment, the whole amount of the purchase money, with interest from the day of the tender.
Upon a careful examination of the entire record, with the aid of excellent briefs and oral argument, we find no reversible error.
No error.
(312)