SMITHFIELD OIL COMPANY, INC. v. C. W. FURLONGE AND WIFE, ALICE M. FURLONGE; AND BETTIE JONES (UNMARRIED).

(Filed 15 June 1962.)

1. **Assignments § 1; Landlord and Tenant § 8; Vendor and Purchaser § 1—**

A lease and an option to purchase contained therein are assignable even without the use of the word "assigns" in the absence of statutory or contractual restrictions.

2. **Same—**

Provision in a lease and option that lessors agree not to sell the property during the term of the lease to any person other than lessees is not a limitation on lessees' right to assign, but is only a recognition that lessors could not, during the term of the lease, sell to anyone except those exercising the right to purchase pursuant to the option.

3. **Same—**

Where there are no statutory or contractual restrictions on the right to assign a lease and option, and there are no personal services contemplated or relation of personal confidence between lessors and lessees, uncontradicted evidence of a valid assignment and the exercise of the option by the assignee within the time limited warrants an instruction that as a matter of law assignee had a right to exercise the option.

4. **Vendor and Purchaser § 2—**

Where the purchaser notifies vendors of his election to exercise the option and that he is ready, able, and willing to pay the purchase price upon tender of deed, vendors' disavowal of the contract by notification that they would not convey constitutes a waiver of actual tender of the purchase price.

5. **Assignment § 4; Vendor and Purchaser § 4—**

Where a partnership assigns its option to purchase certain property in the event the partnership should decide to discontinue its business operations or if the partnership should be dissolved or terminated, and such assignment is duly registered, the rights of the assignee cannot be defeated by a subsequent assignment by one of the partners to a stranger.

**6. Same—**

The fact that an assignment of an option by a partnership is conditional may be asserted as a defence to specific performance only by the members of the original partnership and may not be asserted by the owner of the land as against the assignee of the partnership, certainly when the original partners thereafter perform their agreement by executing an unconditional assignment.

**7. Partnership § 9—**

Even though a partnership ceases to do business, the partnership is not terminated until the winding up of its affairs has been completed.

**8. Assignments § 1; Partnership § 2—**

The assignment by one partner of all his rights in the partnership to a stranger does not affect the rights of the other partner who is not a party to such assignment, and such assignment cannot transfer title to partnership property. G.S. 59-55(2).

**9. Contracts § 12—**

Where the language of a contract is explicit and unambiguous, its legal effect is for the determination of the court.

APPEAL by defendants from *Carr, J.,* November 1961 Term of JOHNSTON.

This is an action for the specific performance of a contract to convey land pursuant to the exercise of an option granted by defendants to the assignors of plaintiff. Plaintiff alleged that it was the assignee of the option to purchase the land described in the complaint; that, within the time provided, it tendered to the defendants the specified purchase price and demanded a deed; that it at all times had been ready, willing, and able to pay the purchase price, but defendants refused to execute the deed. Defendants denied the tender and alleged that they had no contractual relation with plaintiff which obligated them to convey the property.

By stipulation and uncontradicted record evidence, the following facts appear:

Subject to a pre-existing lease not herein involved, on February 13, 1953, the defendants, Dr. C. W. Furlonge and Bettie Jones leased the land in question, a lot in the Town of Smithfield, to Robert A. Bradley and William L. Denning, partners doing business as Bob's Drive-In Grill, parties of the second part. The granting clause demised and leased the premises to the said parties of the second part, their heirs and assigns for five years beginning on the first day of March, 1955. This lease contained the following provisions:

"The lessors agree with the lessees that the lessees shall have the right to purchase said property at any time during the term

of this lease for the sum of $25,000, and the lessors agree not to sell the property during the term of this lease to any person other than the lessees; and by payment of said sum of $25,000 to execute and deliver to said lessees an indefeasible deed in fee simple to said lands; and upon the sale and conveyance of said premises to said lessees, this lease shall terminate and become null and void

"And to the faithful performance of all the agreements herein contained on the part of the parties of the first and the parties of the second part, they do each of them bind themselves, their heirs, executors and administrators and assigns."

This lease was recorded on October 30, 1953, in Book 513, at Page 83 in the office of the Register of Deeds of Johnston County.

On November 2, 1953, Bradley and Denning as "sublessors" leased the property to the plaintiff for the purpose of operating a service station on it until March 1, 1960. This sub-lease was recorded on November 3, 1953, in Book 513 at Page 96. It contained the following:

"Sub-Lessors grant to Lessee, Smithfield Oil Company, Inc. the option to purchase all their rights and privileges that they now or hereafter may be entitled to under the terms of the two Leases from A. J. Harmon and C. W. Furlonge, Odell Jones and Bettie Jones to Sub-Lessors herein, as recorded in Book 513, at pages 83 and 84 of the Johnston County Registry, in the event that Sub-Lessors shall hereafter decide to discontinue the operation of said service station and 'Bob's Drive-In Grill,' or if the partnership of Sub-Lessors known as 'Bob's Drive-In Grill' for any reason shall be dissolved or otherwise terminated."

On March 19, 1954, "subject to the sub-lease agreement" of November 2, 1953 executed by Bradley and Denning to plaintiff, Robert A. Bradley assigned to Edwin A. Jackson all his right, title and interest in the lease agreement of February 13, 1953, recorded in Book 513 at Page 83. This assignment was also recorded.

On October 16, 1957, Robert A. Bradley, William L. Denning, and defendants, Dr. C. W. Furlonge and Bettie Jones, received the following letter from the plaintiff:

"Gentlemen:

"Reference is made to sub-lease and Option to purchase agreement, dated November 2, 1953, recorded in Book 513, page 96, and to original Lease and Option dated February 13, 1953, recorded in Book 513, page 83, Registry, Johnston County, relating

to a lot 140 feet by a 120 feet, corner of Market & 8th Street in the town of Smithfield, North Carolina.

"This is to notify you that Smithfield Oil Company, Inc., (Sub-Lessees) grantee in said sub-lease, desires to and hereby exercise the rights and privileges to purchase, granted by said Options, and stands ready, willing and able to comply with the terms of said Option to purchase agreement. It is requested that you prepare and tender to the Smithfield Oil Company, Inc., a Warranty Deed on or before December 1, 1957, and upon the tender and delivery of a sufficient Warranty Deed, as provided for in said contracts, the undersigned will make payment of the purchase price as provided for under terms of said agreements.

Very truly yours,

SMITHFIELD OIL COMPANY, INC.

By:   (s)  J. Marvin Johnson."

On January 13, 1960, plaintiff's president wrote the defendant, Dr. Furlonge, a letter which contained, *inter alia*, the following:

"I am ready to exercise the option granted in Book 513, pages 83 and 84; Smithfield Oil Company is, as you know, the owner of this option by purchase from the original lessees.

"Please have your attorney make Smithfield Oil Company, Inc., the Grantee in the deed of purchase. May we have your immediate attention in this matter."

On February 15, 1960, Bradley and Denning, in compliance with the provisions of the sub-lease of November 2, 1953, conveyed to the plaintiff the right to purchase which they had acquired under the leases recorded in Book 513 at page 83. This agreement was recorded on February 15, 1960.

Witnesses for the plaintiff testified that Bob's Drive-In Grill, referred to in the sub-lease of November 2, 1953, had been discontinued in the early part of 1954; that between the 15th and 17th of February, 1960, J. Marvin Johnson, president of the plaintiff corporation, informed defendants that plaintiff proposed to exercise its option to buy the property in question and that it was ready, willing, and able to pay for it upon receipt of a deed; that defendant Jones told him Dr. Furlonge was handling the matter for her; that the defendant Dr. Furlonge told Johnson that he had knowledge of the contract and option and referred him to their attorney, Mr. Albert Noble; that Johnson then told Noble that plaintiff was ready to pay the money and requested him to prepare the deed by which defendants would convey the property to the plaintiff; that Noble did not say "yes" or

"no", but told him he would confer with him in the near future; that the next day Mr. Noble called Mr. Johnson and told him his client did not desire to sell and would not give plaintiff a deed.

Plaintiff's evidence further tended to show that during the period from February 15th to February 19th, it had $25,000.00 to hand defendants, either by check or in cash, simultaneously with the presentation of the deed. Plaintiff instituted this action for specific performance on February 19, 1960.

The defendants' evidence tended to show that Johnson's visit to Attorney Noble was ten days or two weeks before February 15, 1960, and before Bradley and Denning had assigned their option to the plaintiff; that the purpose of Johnson's visit to Noble was to negotiate a trade of lots and the purchase of the lot under the option was not mentioned. Noble testified that Johnson did not come to see him at all between February 15th and February 19th, 1960, but that he did tell Johnson over the phone that Dr. Furlonge had decided he did not want to get rid of the land; that for about two weeks before February 15th, he had been searching the records every few days to see if there had been a transfer of the option to the plaintiff by Denning or Bradley or by Denning and Johnson; that his interpretation of the lease was that defendants were not obligated to convey the land to anybody except Bradley and Denning and that was the reason he told Mr. Johnson that Dr. Furlonge was not going to convey the property.

Defendants' motions for nonsuit at the close of plaintiff's evidence and at the close of all the evidence were denied. The jury, by its answer to the issues, found that between the dates of February 15th and February 19th, 1960, the plaintiff notified the defendants of its intention to exercise the option rights under the agreements of February 13, 1953, recorded in Book 513 at Page 83, and November 2, 1953, recorded in Book 572 at Page 591; that the defendants after demand refused to comply with the terms of the written agreement to convey the property described in the complaint; that the plaintiff at the time of making the demand did not tender $25,000.00 to the defendants, but was ready, willing, and able to comply with the terms of the lease and option agreement and to pay the $25,000.00; and that the plaintiff was entitled to have the defendants execute and deliver to it a deed for the property upon the payment of the sum of $25,000.00. From judgment entered upon the verdict, the defendants appealed.

*Pope Lyon and Albert A. Corbett for plaintiff appellee.*
*Herman L. Taylor and Samuel S. Mitchell for defendant appellants.*

SHARP, J.  The defendants list thirteen assignments of error. However, the hub of the appeal is clearly the denial of their motions for nonsuit, and a discussion of the questions raised by these motions will dispose of the other assignments of error.

In support of their motions for nonsuit defendants argue that: (1) the option was personal between the original parties and was not assignable to the plaintiff; (2) plaintiff did not tender the $25,000.00 purchase price; (3) on March 19, 1954, Robert A. Bradley, one of the members of the partnership which was the grantee in the original lease of February 13, 1953, assigned his interest therein to Edwin A. Jackson and thereafter had nothing to assign to plaintiff; and (4) defendants had no knowledge of the assignment of the option on February 15, 1960 to the plaintiff. These arguments are without merit.

The rule is that in the absence of a statutory or contractual restriction on the assignment of a lease, such lease, and an option to purchase contained therein, is assignable. *Pearson v. Millard,* 150 N.C. 303, 63 S.E. 1053; *Cadillac-Pontiac Co. v. Norburn,* 230 N.C. 23, 51 S.E. 2d 916; 55 Am. Jur., Vendor and Purchaser, Section 42; Anno. 45, A.L.R. 2d 1034, 1036. The right is not dependent on the use of the word "assigns" in the lease but exists absolutely in the absence of contractual or statutory prohibitions. 32 Am. Jur., Landlord and Tenant, Section 319.

There was nothing in the lease agreement, executed February 13, 1953 by and between the defendants and the partnership composed of Bradley and Denning, which precluded a sub-lease or an assignment of either the lease or the option. The lease specifically provides that it is binding on the assigns of all of the parties. The contract involved no personal services or relation of personal confidence, only the payment of a specified rental and the sales price of $25,000.00 in the event the option were exercised. The provision contained in the option clause of the lease that "lessors agreed not to sell the property during the term of this lease to any person other than the lessees," was merely an affirmation of the option itself and a recognition by the lessors that, having agreed to sell to the lessees at any time during the term of the lease, they could not sell to anyone else.

The defendants' second contention that they were entitled to a nonsuit because the plaintiff did not tender the $25,000.00 purchase price before the institution of the suit is equally untenable. Plaintiff's evidence tended to show — and the jury so found — that the defendants disavowed the contract before the option expired. Notice from defendants that they would not carry out the terms of the option made unnecessary a tender of payment by the plaintiff. *Millikan v. Simmons,*

244 N.C. 195, 93 S.E. 2d 59; *Penny v. Nowell,* 231 N.C. 154, 56 S.E. 2d 428. As the Court said with reference to a similar situation in the latter case, "such a tender would avail nothing according to the testimony of the record. The law does not require the doing of a vain thing. The disavowal was a waiver of the requirement." The evidence was plenary that the plaintiff was ready, willing, and able to pay the purchase price at the time it requested defendants to comply with the terms of the option and deliver the deed. If defendants' attorney informed the plaintiff — and the jury so found from the evidence — that defendants did not desire to sell at that time and would not make plaintiff a deed, the futile gesture of a tender was not necessary.

Defendants' third defense is that Bradley, prior to February 15, 1960 had assigned all his interest in the option to Johnson and therefore the partnership of Bradley and Denning could not assign the option to plaintiff on that day. This argument overlooks the following facts: (1) the contract of November 2, 1953, in which Bradley and Denning gave plaintiff the right to purchase their option, was immediately recorded in the office of the Register of Deeds of Johnston County, and thereafter the rights of the plaintiff could not be defeated by an assignment; (2) the agreement between Bradley and Johnson on March 19, 1954 specifically provided that it was subject to the rights of the plaintiff; (3) the right to exercise the option was an asset of the partnership of Bradley and Denning, doing business as Bob's Drive-In Grill. Although this partnership had ceased to do business, it was not terminated until the winding up of its affairs had been completed. Denning was not a party to the assignment to Jackson on March 19, 1954 and Bradley had no right to assign the option "except in connection with the assignment of rights of all the partners in the same property." G.S. 59-55(2).

Defendants' fourth argument that they had no notice of the assignment of February 15, 1960 is also untenable. In their pleadings defendants based their defense on a failure of tender and a denial of any contractual obligation to convey to the plaintiff. This is still their position. At the trial defendants stipulated that on February 16, 1960 Bradley and Denning executed the agreement which purported to transfer to the plaintiff their rights under the option contained in the lease of February 13, 1953. Since the letter of October 16, 1957, which each defendant stipulated he received, they had known that plaintiff was the assignee of their lease to Bradley and Denning. They also knew that plaintiff claimed the right to exercise the option the lease contained. It is implicit in the evidence in this case that the defendants desired to defeat the option and to avoid the consequences of the contract they had made. They were counting on plaintiff's over-

looking the fact that its sub-lease of February 13, 1953 did not contain an assignment of option but merely gave plaintiff *the option to buy the option* if the partnership known as Bob's Drive-In Grill should be dissolved or terminated. By the assignment of February 15, 1960, duly recorded on that date, this potential defense was eliminated. Counsel for defendants testified that prior to that date he had been watching the records to see if such an assignment would be recorded. Dr. Furlonge testified that he had knowledge of the contract and the option.

If there were any defenses available to Bradley and Denning which might have defeated plaintiff's right to an assignment from them, Bradley and Denning did not interpose them. They complied with their agreement and conveyed to the plaintiff their right to exercise the option. In any event, their unused defenses would not have been available to defendants.

The terms of the written agreements which fixed the rights of the parties to this action were explicit and unambiguous. Therefore, it was the duty of the Court to determine their effect by simply declaring their legal meaning to the jury. *Strigas v. Insurance Co.*, 236 N.C. 734, 73 S.E. 2d 788. This the trial judge did by telling the jury, in effect, that after the assignment of February 15, 1960 the plaintiff had legal right between that time and February 19, 1960, the date the suit was instituted, to have defendants execute and deliver to it a deed for the land described in the complaint upon the payment of the purchase price; that if defendants "refused to execute the deed after February 15, 1960 and before the time this suit was instituted, after demand had been made and the statement had been made that the purchase price was ready and could be paid, . . . it would not be necessary then for the plaintiff to tender the sum of $25,000.00 in order to be entitled to exercise the option rights."

The record discloses that this case was carefully and fairly tried by an able and experienced judge. The issues tendered by the defendants were not material in the case. Upon appropriate issues the jury found the controverted facts in favor of the plaintiff. The judge correctly entered judgment for the plaintiff on the verdict. Each of defendants' assignments of error has been considered and is overruled. In the trial below we find

No error.