MEINHART LAGIES, Plaintiff v. BOBBY MYERS, Defendant

No. COA99-1238

(Filed 20 February 2001)

**1. Vendor and Purchaser— lease and option to purchase— exercise of option**

The trial court did not err in a bench trial of claims for specific performance and damages arising from a lease and option to purchase a residence by concluding that plaintiff was required to tender the full balance of the purchase price prior to 5 April 1997 to exercise the option. The option must be exercised strictly in accordance with its terms and, while the better practice may be to provide for simultaneous tender of the deeds and a period to negotiate unsettled issues, the courts do not have the authority to rewrite the parties' agreement. Because the nature and terms of the parties' agreement relating to the expiration of the option were ambiguous, the parties' intent was ascertained by examining their actions.

**2. Vendor and Purchaser— contract to sell—specific performance—option not exercised**

The trial court did not err by not ordering specific performance of a contract to sell real estate resulting from an option where plaintiff did not exercise the option as specified in the agreement.

**3. Vendor and Purchaser— lease and option to purchase— improvements—reimbursement**

The trial court did not err in a bench trial resulting from a lease and option to purchase a residence by concluding that plaintiff was not entitled to reimbursement for renovations where plaintiff could not recover under unjust enrichment because there was an express agreement concerning improve-

ments and could not recover under the agreement because the court found that defendant never received defendant's approval for the improvements.

Appeal by plaintiff from judgment entered 2 March 1999 by Judge E. Lynn Johnson in Superior Court, Cumberland County. Heard in the Court of Appeals 24 August 2000.

*George B. Currin and Robert H. Hale, Jr. for plaintiff-appellant.*

*The Plyler Law Firm, P.A., by Matthew P. Plyler, and H. Dolph Berry for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Meinhart Lagies ("plaintiff") appeals from a judgment denying his claims for breach of contract, specific performance, and unjust enrichment. Having carefully considered the record, briefs, and arguments of counsel, we affirm.

The pertinent factual and procedural background is as follows: Plaintiff and Bobby Myers ("defendant") entered into an "Agreement for Lease Option and Offer to Purchase" ("the agreement"). Under the agreement, plaintiff leased and retained an option to purchase defendant's residence and surrounding property ("the property") located in Fayetteville, North Carolina. The agreement specified the following:

2. [Plaintiff] shall pay [defendant] the sum of $20,000.00 for a two (2) year Option to Purchase. After two (2) years, [plaintiff] may extend the Option for one (1) more year with a payment of $10,000.00. Such payments shall be credited toward the balance.

3. For the first year of the Option, [plaintiff] shall make monthly payments to [defendant] covering [defendant's] current first mortgage (at this time approximately $736.00 a month) plus interest at five (5%) percent on the balance. [Plaintiff] understands the first mortgage to be approximately $98,000.00. The balance would be, after the $20,000.00 payment, approximately $107,000.00.

4. In the second and third years of the Option, the interest rate on the balance shall be the same as the prevailing Federal

Reserve prime rate. Further, in the second and third years, [plaintiff] shall increase his monthly payments by a minimum of $300.00. He has the option of paying more. All such payments shall go to reduce the balance due.

5. Possession shall be on the day of the $20,000.00 payment, on or about May 12, 1994.

. . . .

10. Any minor cosmetic improvements made by [plaintiff] shall be at his own risk. The cost of other improvements, and all mechanical repairs and changes, shall be refunded to [plaintiff] should he not exercise his Option.

11. [Defendant's] approval shall be required on all repairs, improvements and changes.

12. The Option may be exercised at any time during the three (3) years by payment of the full balance.

. . . .

15. [Defendant] has the right to keep the property listed until date of possession for the sole purpose of soliciting back-up offers in case [plaintiff] has to invoke the contingency clause.

. . . .

17. The option payments are not refundable, except for any money spent by [plaintiff] on major improvements or repairs as outlined above.

On 11 May 1994, plaintiff paid defendant $20,000.00 and took possession of the property. During the first year of the option, plaintiff began extensive improvements to the property, including repairs and renovations to one of the two kitchens in the main residence and a guest house.

A dispute over the repairs and renovations developed between the parties. Defendant testified that in November 1994, he informed plaintiff, through his attorney, James Thorp ("Thorp"), that plaintiff should not begin renovations to the kitchen. In a subsequent letter, Thorp reminded plaintiff that he would be held accountable for any damages arising out of unauthorized improvements to the kitchen. Plaintiff responded, informing Thorp that defendant had, in fact, approved the improvements.

In May and August 1995, plaintiff informed defendant of various improvements to the property and invited him to inspect the improvements at his convenience. In response, Thorp again forewarned plaintiff:

> [Defendant] has not approved any improvements, repairs or changes within the contemplation of Paragraph 11 and in the event of the non-exercise of the option, the cost of such major improvements and repairs will not be refundable to you in the event of non-exercise of the option.

Plaintiff and his wife testified at trial that plaintiff discussed the renovations to the property with defendant on several occasions. Plaintiff further testified that defendant had prior knowledge of the repairs, consented to them, and approved of them. Defendant, however, maintained that he had not approved any repairs or improvements. Defendant further maintained that when he received correspondence from plaintiff concerning the renovations and repairs, he "turned it over—all these letters went to my attorney. My attorney answered him, do not do any repairs."

In addition to the dispute over the repairs and renovations, plaintiff and defendant developed differing interpretations of certain provisions of the agreement. Plaintiff maintained that pursuant to a provision in the agreement stating, "All such payments shall go to reduce the balance due[,]" he was entitled to reduce the balance due on the property's purchase price by his monthly payments on the balance of the first mortgage. Plaintiff testified at trial that defendant did not dispute his interpretation of the agreement for two years. Plaintiff noted that he provided defendant with monthly "mortgage amortization tables," indicating a reduction in the balance of the purchase price by the monthly mortgage payments.

Defendant acknowledged below that he and plaintiff differed in their opinions concerning the reduction in the purchase price. However, he maintained that under the agreement, only the yearly option payments and the $300.00 increase in the monthly payments reduced the property's purchase price. Defendant explained that plaintiff's monthly payment reducing the first mortgage was part of the rent on the property.

In April 1996, Thorp informed plaintiff that "[t]he only monies used for reduction of the principle [are] the monies paid to [defend-

ant] as per your agreement, which is the $300.00 per month." On 11 May 1996, plaintiff paid defendant $10,000.00, extending the option for an additional year.

Plaintiff's attorney, Richard Wiggins ("Wiggins"), informed plaintiff that the option began on the date the agreement was executed, not the date of possession. In a 23 January 1997 letter entitled, "Notice of Intent to Exercise Option," Wiggins advised defendant: "This letter serves as legal notice that [plaintiff] intends to exercise his option to purchase the property before the option expires later this year."

On 4 April 1997, defendant's new attorney, Stuart Clarke ("Clarke"), informed plaintiff that according to defendant's calculations, the balance due on the purchase price of the property was $190,045.58. On that same day, Wiggins informed Clarke that according to plaintiff's records, the "pay-off at this time should be $180,153.21," thereby giving plaintiff credit for the portion of his monthly payments reducing the first mortgage's balance.

Wiggins believed that the option originally terminated on 5 April 1997. Accordingly to both Clarke and Wiggins, the two attorneys discussed extending the option past 5 April 1997. In fact, Wiggins informed Clarke that plaintiff had another monetary commitment expiring on 15 April 1997, and as a result, the attorneys agreed to extend the option until that date. Both Clarke and Wiggins testified that pursuant to their negotiations, the option had been extended until and expired on 15 April 1997.

On 11 April 1997, Wiggins informed Clarke that plaintiff "continu[ed] to be ready to close the transaction under the terms of the option between him and [defendant]" and "rais[ed] no issues, pos[ed] no demands and question[ed] nothing outside the terms of the agreement." On 14 April 1997, Clarke informed Wiggins that although plaintiff "insist[ed] upon getting whatever benefit that was paid on the first mortgage over the period of time[, that] was not contemplated by the parties and that is the reason [defendant] insist[ed] upon the $190,045.58 figure." Clarke testified at trial that on that same day, he prepared two warranty deeds to the property, which were executed by plaintiff but not notarized, and that at some point, he faxed the deeds to Wiggins. Wiggins testified that he received the faxed deeds on 17 April 1997.

Plaintiff maintained that during this period of time, he was preparing to tender what he believed to be the purchase price due on the property. However, plaintiff did not tender the purchase price to defendant by 15 April 1997.

On 23 April 1997, Clarke advised Wiggins that he had "been directed by [his] client to inform [plaintiff] that his failure to exercise his option within the time allowed by the agreement has expired and he no longer ha[d] an interest in the property." Upon inquiry by Wiggins, however, Clarke stated that defendant would accept $190,045.58 within seven days of 29 April 1997 and would deliver deeds to the property upon tender of that amount. Clarke informed Wiggins that defendant made the aforementioned offer without waiving his rights under the agreement and that if plaintiff did not tender the full payment by the specified date, defendant would take possession of the property. At trial, Clarke testified that the 29 April 1997 communication was a new offer and not an extension of the option.

On 1 May 1997, Wiggins communicated a counteroffer to Clarke via telephone. In response, Clarke informed Wiggins of the terms by which defendant was willing to convey the property. On 8 May 1997, Clarke advised Wiggins that defendant directed him to withdraw all offers and that defendant intended to take possession of the property immediately. On 12 May 1997, Clarke again informed Wiggins that defendant was "no longer interested in selling his property to [plaintiff]" and that "[a]ll further negotiations [were] in vain."

Plaintiff filed the present action against defendant, asserting that despite defendant's contentions to the contrary, he had indeed exercised his option to purchase the property and that as a result, a contract for sale was created. Plaintiff sought specific performance of the resulting contract for sale. In the alternative, plaintiff requested damages for breach of contract and "reimbursement" for the cost of repair and improvements to the property, "to prevent [d]efendant's unjust enrichment."

Following a bench trial, the trial court denied relief on all claims. Pertinent to the arguments presented on appeal, the trial court made the following findings of fact:

6. Defendant told Plaintiff that he objected to paragraph No. 15; that he was not going to give Plaintiff credit toward the purchase price for the principal reduction paid in his mortgage . . . ; Defendant further told Plaintiff he wanted the right

to approve any repairs, improvements and changes before Plaintiff did the same.

. . . .

21. The payment of the additional $10,000 [in May 1996] extended the option to purchase granted Plaintiff until and including April 5, 1997.

. . . .

23. Defendant informed Plaintiff that the remodeling changes and repairs were without Defendant's consent; that Plaintiff would be held liable; that Plaintiff was further informed by Defendant's attorney on November 9, 1994 that Defendant had not approved any improvements, repairs or changes and again by letter dated August 15, 1995.

. . . .

29. On April 5, 1997[,] Defendant was ready, willing and able to deliver Warranty Deeds conveying the subject property to Plaintiff.

. . . .

35. On April 14, 1997 Defendant's attorney prepared Warranty Deeds for delivery to Plaintiff and faxed copies of the same to Plaintiff's attorney.

. . . .

39. Considering the totality of the negotiations and documentary evidence, the accounting methodology utilized by the Defendant, . . . in determining the balance due on the purchase price[,] is the more reasonable.

Based upon its factual findings, the court concluded the following:

(2) Under the terms of the Agreement of April 5, 1994, Plaintiff's Option to Purchase was to expire April 5, 1997, the same having been extended for an additional year by Plaintiff's payment of $10,000 in 1996.

(3) The parties, by and through their respective counsel, mutually agreed to extend Plaintiff's option period until April 15, 1997.

LAGIES v. MYERS

[142 N.C. App. 239 (2001)]

(4) Plaintiff's option to purchase expired April 15, 1997.

(5) The balance due on the purchase price on April 15, 1997 was . . . $190,045.58.

(6) In order to exercise his option to purchase, it was necessary for Plaintiff to tender or pay the balance of the purchase price due Defendant before the option expired.

(7) The Plaintiff failed to exercise his option to purchase before the same expired on April 15, 1997.

(8) Plaintiff is not entitled to an Order of Specific Performance compelling Defendant to convey the subject property.

(9) Plaintiff failed to accept any new offer of sale by the Defendant made after April 15, 1997 before the new offer or offers were withdrawn by Defendant.

. . . .

(11) The Agreement, in Paragraph [Ten] and Eleven, required Plaintiff to obtain Defendant's approval on all repairs, improvements and changes in order for Plaintiff to be reimbursed for the cost thereof if the option was not exercised;[] that the same is an express contract regarding Plaintiff's entitlement to reimbursement.

(12) Plaintiff has failed to carry his burden of proof by representing [sic] evidence from which the Court could find, by the greater weight thereof, that any repairs, improvements and changes were authorized by Defendant.

(13) Plaintiff is not entitled to recover any sums from Defendant upon his claim of unjust enrichment, there being an express contract between the parties governing the matters for which Plaintiff seeks relief.

Plaintiff appeals the trial court's judgment.

---

In a bench trial, the trial court is required to "find the facts specifically and state separately its conclusions of law." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (1999). If the court's factual findings are supported by competent evidence, they are conclusive on appeal, even though there is evidence to the contrary. *Newland v. Newland*, 129 N.C. App. 418, 420, 498 S.E.2d 855, 857 (1998). In reviewing the court's factual findings, we "presume[] that the judge disregarded any

incompetent evidence." *In re Huff*, 140 N.C. App. 288, 298, 536 S.E.2d 838, 845 (2000) (citation omitted).

In contrast, "the trial court's conclusions of law are reviewable *de novo.*" *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000) (citation omitted). Furthermore, in examining the conclusions of law, we must determine whether they are supported by the court's factual findings. *See In re Oghenekevebe*, 123 N.C. App. 434, 473 S.E.2d 393 (1996).

The questions presented in the appeal *sub judice* are whether the trial court erred in concluding: (I) that to exercise the option, plaintiff was required to tender the full balance on the purchase price of the property prior to 5 April 1997; (II) that plaintiff was not entitled to specific performance or damages for breach of contract; and (III) that plaintiff was not entitled to "reimbursement" for improvements and repairs made to the property. To answer the foregoing questions requires construction of the parties' agreement.

Generally, the same principles of construction applicable to all contracts apply to option contracts. *See Catawba Athletics v. Newton Car Wash*, 53 N.C. App. 708, 711-12, 281 S.E.2d 676, 678-79 (1981). "[T]he ultimate test in construing any written agreement is to ascertain the parties' intentions in light of *all* the relevant circumstances." *Davis v. McRee*, 299 N.C. 498, 502, 263 S.E.2d 604, 606 (1980) (emphasis in original). If the option terms are clear and unambiguous, "it must be enforced as it is written, and the court may not disregard the plainly expressed meaning of its language." *Catawba Athletics*, 53 N.C. App. at 712, 281 S.E.2d at 679 (citation omitted). For the language of the contract reflects the intent of the parties, and we therefore presume that the language means what it purports to mean. *Williamson v. Burlington*, 139 N.C. App. 571, 574, 534 S.E.2d 254, 256 (2000).

Where the language of a contract is ambiguous, courts consider other relevant and material extrinsic evidence to ascertain the parties' intent, including but not limited to the parties' construction of the contract after its execution. *Patterson v. Taylor*, 140 N.C. App. 91, 535 S.E.2d 374 (2000); *Davis*, 299 N.C. at 502, 263 S.E.2d at 607 (citation omitted) ("where the parties have placed a particular interpretation on their contract after executing it, the courts ordinarily will not ignore that construction which the parties themselves have given it prior to the differences between them"). If the court considers extrin-

sic evidence, it must "determine the weight and credibility of that evidence." *Patterson,* 140 N.C. App. at 97, 535 S.E.2d at 378.

A contract provision is ambiguous if its language "is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank,* 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.,* 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988) (citation omitted).

Ambiguities in contracts are construed against the drafting party. *Rice v. Wood,* 91 N.C. App. 262, 371 S.E.2d 500 (1988). However, "[o]ptions, 'being unilateral in their inception, are constructed strictly in favor of the maker, because the other party is not bound to perform[], and is under no obligation to buy.' " *Catawba Athletics,* 53 N.C. App. at 712, 281 S.E.2d at 679 (quoting *Winders v. Kenan,* 161 N.C. 628, 633, 77 S.E. 687, 689 (1913)).

I.

**[1]** By his first assignment of error, plaintiff argues that the option to purchase in the present case could be exercised by simply notifying defendant of his intent to purchase the property. In so arguing, plaintiff contends that the trial court erred in concluding that tender of the purchase price was required to exercise the option. With plaintiff's argument, we cannot agree.

An option contract is not a contract to sell, but "a continuing offer to sell [] land which is irrevocable until the expiration of the time limit of the option." *Catawba Athletics,* 53 N.C. App. at 714, 281 S.E.2d at 680. *See generally* 1 Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina,* § 9-1 (5th ed. 1999). In the context of option contracts, "time is of the essence[,] and acceptance and tender *must* [therefore] be made within the time required by the option." *Rice,* 91 N.C. App. at 263, 371 S.E.2d at 502 (emphasis added) (citation omitted). Furthermore, the option must be exercised strictly "in accord with all of the terms specified in the option." *Catawba Athletics,* 53 N.C. App. at 712, 281 S.E.2d at 679 (citations omitted); *see also Theobald v. Chumley,* 408 N.E.2d 603, 605 (Ind. Ct. App. 1980) ("since the optionee is the sole party capable of consummating the option, courts require strict adherence to the option's terms"). The plaintiff has the burden of

demonstrating that he exercised the option in accordance with the option's terms. *Parks v. Jacobs*, 259 N.C. 129, 129 S.E.2d 884 (1963).

The agreement in the present case plainly and unambiguously stated, "The Option may be exercised at any time during the three (3) years by payment of the full balance." Relying upon *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976), plaintiff asserts that despite the terms specified by the agreement, notice was sufficient to exercise the option in the present case.

In *Kidd*, our Supreme Court examined an option which specified that the optionors would deliver to optionees "*upon demand by* [them] a good and sufficient deed for the . . . premises *upon payment.*" *Kidd*, 289 N.C. at 347, 222 S.E.2d at 396 (emphasis added). The option further specified, "In the event of the exercise of this option . . . the said purchasers *may have a reasonable additional time for title examination.*" *Id.* at 362, 222 S.E.2d at 405 (alteration in original). Because the option provided that the deed was to be delivered "upon demand" by the optionee and further allowed him additional time to examine the title, our Supreme Court found that notice was sufficient to exercise the option. *Id.* In so concluding, the court announced the following:

> Whether tender of the purchase price is necessary to exercise an option depends upon the agreement of the parties as expressed in the particular instrument. The acceptance *must* be in accordance with the terms of the contract. Where the option requires the payment of the purchase money or a part thereof to accompany the optionee's election to exercise the option, tender of the payment specified is a condition precedent to a formation of a contract to sell unless it is waived by the optionor. On the other hand, the option may merely require that notice be given of the exercise thereof during the term of the option.

*Id.* at 361, 222 S.E.2d at 405 (emphasis added) (citations omitted).

Plaintiff's reliance on *Kidd* to support his argument is misplaced. First, the option in *Kidd* is distinguishable from the option in the case *sub judice.* The *Kidd* option specified that "upon payment," the optionors were to deliver a deed to the property. The option examined in *Kidd* also required that the property deed was to be delivered "upon demand" and further allowed the optionee additional time to examine the title. In contrast, the option agreement in the present

case stated only that the option may be exercised by payment of the full balance.

Second, if anything, the *Kidd* decision compels the conclusion that the only acceptable method for exercising the option in the present case was by payment of the full balance. *Kidd* reaffirmed the well-established principle stated *supra*—that options arising under the laws of this State *must* be exercised strictly as specified by the option agreement. *See generally* Thomas W. Christopher, *Options to Purchase Real Property in North Carolina*, 44 N.C. L. Rev. 63, 83 (1965) ("The importance of specifying the means of acceptance in plain language is evident in North Carolina."). Given our jurisprudence concerning options to purchase and in accordance with *Kidd*, we conclude that under the unambiguous terms of the agreement, the only method for exercising the option in the present case was by payment of the full balance of the purchase price.

In addition to his reliance on *Kidd*, plaintiff argues that notice, not tender of the purchase price, was required to exercise the option because the agreement contained no provision for the simultaneous tender of the deeds to the property. Plaintiff further argues that because several issues remained unsettled at the time the option was to expire, the parties clearly intended that the option could be exercised by giving notice, thus allowing time to resolve those issues.

We find no authority supporting plaintiff's arguments. Certainly, the better practice may have been to provide for simultaneous tender of the deeds and a period to negotiate the allegedly unsettled issues prior to the time that the purchase price was to be tendered. However, neither the trial court nor this Court has the discretion to rewrite the parties' agreement. *See cf. Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) (citation omitted) (" 'courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein' "). As such, the trial court correctly concluded that the only method for exercising the option was the method specified in the agreement—payment of the balance.

In the alternative, plaintiff contends that even if he was required to tender the full balance of the purchase price to exercise the option, he was not given the opportunity to do so because defendant withdrew or revoked the option prior to its expiration. In so arguing, plaintiff asserts that the trial court erred in concluding that the option

originally expired on 5 April 1997 and that it was extended until 15 April 1997. Plaintiff further asserts that the court erred in finding that "payment of the additional $10,000 extended the option to purchase granted Plaintiff until and including April 5th, 1997."

Plaintiff argues that the option expired on 11 May 1997, exactly three years after he took possession of the property. Plaintiff contends that this conclusion is supported by the agreement's terms which specify that he was to take possession of the property on or about 12 May 1994 and that defendant retained the right to list the property until that date. With plaintiff's argument, we cannot agree.

The document scrutinized *sub judice* did not indicate the exact date upon which the option was to begin or expire. Furthermore, it is admittedly difficult to discern whether the terms of the agreement refer to or implicate the option or the lease. The parties executed the agreement on 5 April 1994. However, it specified that plaintiff was not to take possession of the property until or about 12 May 1994 and that defendant was entitled to list the property until that date.

We find the nature and terms of the parties' agreement relating to the expiration of the option, at best, ambiguous. We therefore examine the parties' actions subsequent to the execution of the agreement to ascertain their intent concerning the option's expiration.

Plaintiff's attorney, Wiggins, and defendant's attorney, Clarke, conducted business as if the option expired on 5 April 1997. Wiggins began preparation to exercise the option in January 1997. Based on the assumption that the option expired on 5 April 1997, plaintiff's own attorney requested an extension of the option, thus allowing plaintiff time to settle another financial obligation. Pursuant to Wiggins' request, the attorneys extended the offer until 15 April 1997. If the parties indeed intended that the option expire 11 May 1997, it would have been unnecessary for Wiggins to request an extension. Furthermore, after 15 April 1997, communications between the attorneys were referred to as "offers," not continuing negotiations. We also find it significant that in his trial brief below plaintiff himself stated, "It is undisputed between the parties that, at the earliest, the option expired on April 15, 1997," and did not argue that the option expired on 11 May 1997.

The aforementioned review of the parties' conduct during the option period reveals their intention that the option expire 5 April

1997. Accordingly, the trial court did not err in concluding that the option was to expire on 5 April 1997 and was thereafter extended until 15 April 1997. Furthermore, we find no evidence in the record indicating that defendant withdrew or revoked the option prior to its 15 April 1997 expiration.

Plaintiff argues that even if we conclude the option expired on 15 April 1997, he was excused from tendering payment of the purchase price in exercising the option because defendant refused to accept a reduced purchase price, thus indicating his refusal to honor their agreement. In so arguing, plaintiff contends that the trial court erroneously found: "Considering the totality of the negotiations and documentary evidence, the accounting methodology utilized by [defendant], in determining the balance due on the purchase price[,] is the more reasonable." We disagree.

It is well established that notice from the optionor of his refusal to honor the terms of the option renders tender of payment by the optionee unnecessary. *Oil Co. v. Furlonge*, 257 N.C. 388, 393, 126 S.E.2d 167, 171 (1962). However, defendant *sub judice* never indicated his refusal to honor the terms of the agreement. In fact, Wiggins testified, "[T]hroughout this transaction [defendant] never refused to convey title based upon his interpretation of the money that he was due to receive upon the closing of the transaction."

Furthermore, contrary to plaintiff's contentions, our review of the agreement reveals that the provision specifying, "All such payments shall go to reduce the balance due" clearly refers to the $300.00 plus increase in the monthly payments but not plaintiff's monthly payments reducing defendant's first mortgage. The aforementioned provision immediately followed the term providing for the $300.00 increase in the monthly payments. Moreover, the provision was contained solely within paragraph four and made no reference to the paragraph providing for the payments that reduced the first mortgage. Based upon our examination of the agreement, we conclude that defendant sought to enforce the terms of the agreement as written.

The parties' negotiations prior to the formation of the final agreement also support our conclusion. Defendant testified that he and plaintiff discussed the possibility of a reduction in the purchase price by the amount of the mortgage payments. Plaintiff presented defendant with a draft agreement, which included the following provision: "Reduction in [the] principal of first mortgage as well as balance shall

be credited to buyer when option is exercised." Defendant testified that during the negotiation period and upon advice from his attorney, the term providing for a credit due to plaintiff's payment on the mortgage was removed. Plaintiff testified that defendant presented him with a copy of the final agreement and that he signed it. Plaintiff further testified that "like an utter idiot [he] did not read on to notice that the principal reduction paragraph . . . was deleted[.]" However, plaintiff's failure to review the document did not excuse his obligations under the parties' agreement. *See Isley v. Brown*, 253 N.C. 791, 794, 117 S.E.2d 821, 824 (1961) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 23 L. Ed. 203 (1875)) (" 'contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission' ").

Based upon the aforementioned analysis, we conclude that plaintiff did not exercise the option as specified by the agreement. We further conclude that defendant never expressed a refusal to honor the agreement and therefore, plaintiff was not excused from tendering the purchase in order to exercise the option. Plaintiff's first assignment of error is consequently overruled.

## II.

[2] By his next assignment of error, plaintiff argues that the court erred in failing to order specific performance of the resulting contract for sale. This assignment of error is without merit. Because plaintiff did not exercise the option as specified in the agreement, it did not result in a contract for sale, and plaintiff is therefore not entitled to specific performance. *See Kidd*, 289 N.C. at 352, 222 S.E.2d at 399 (citations omitted) (an option becomes a contract for sale only "upon acceptance by the optionee in accordance with its term[,]" and only then is it "specifically enforceable as a contract to convey if it is otherwise a proper subject for equitable relief").

In the alternative, plaintiff assigns as error the court's failure to order damages for breach of the option contract. Because plaintiff presents no argument on appeal in support of this assignment of error, it is deemed abandoned. *See* N.C.R. App. P. 28(b)(5) (2001).

## III.

[3] Finally, plaintiff contends that under the agreement, he was entitled to reimbursement for repairs, improvements, and replacements to the property. As such, plaintiff argues that the court erred in finding that "[d]efendant informed [p]laintiff that the remodeling changes

and repairs were without [d]efendant's consent" and in concluding that "[p]laintiff has failed to carry his burden of proof by representing [sic] evidence from which the Court could find, by the greater weight thereof, that any repairs, improvements and changes were authorized by [d]efendant." In so arguing, plaintiff points to a myriad of evidence he presented below that conflicts the court's factual findings concerning the repairs and improvements to the property.

As to any claim by plaintiff that defendant was unjustly enriched by improvements or renovations to the property, plaintiff cannot recover under a theory of unjust enrichment because an express agreement concerning the improvements existed between the parties. *See Whitfield v. Gilchrist,* 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment.").

Furthermore, plaintiff was not entitled to reimbursement pursuant to the terms of the express agreement because according to the trial court's factual findings, plaintiff never received defendant's approval. Defendant testified that he, through his attorney, informed plaintiff that plaintiff was not to begin any improvements and that defendant had not approved any improvements. Based upon this and other competent evidence, the trial court found that defendant had not approved any repairs or renovations. The court's findings are conclusive on appeal, despite what evidence plaintiff presented to the contrary. *See Newland,* 129 N.C. App. at 420, 498 S.E.2d at 857. Based upon its aforementioned finding, the court concluded that plaintiff failed to establish that defendant approved the renovations and was therefore not entitled to reimbursement for them. We find that the court's conclusion was fully supported by its factual finding. Accordingly, this assignment of error is overruled.

Based on the foregoing analysis, we affirm the judgment of the trial court.

Affirmed.

Judges WYNN and McGEE concur.