EDWIN SWAIN, Plaintiff v. CAROLYN ELFLAND, individually and in her official capacity as an Assistant Vice Chancellor for Auxiliary Services of the University of North Carolina at Chapel Hill, JEFFREY McCRACKEN, individually and in his official capacity as Major in the Police Department of the University of North Carolina at Chapel Hill, DRAKE MAYNARD, individually and in his official capacity as Human Resources Administrator for the University of North Carolina at Chapel Hill, and OTHER UNKNOWN UNIVERSITY OFFICIALS, and the UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Defendants

No. COA00-258

(Filed 7August 2001)

## 1. Employer and Employee— wrongful discharge—retaliation—conjecture

The trial court did not err by granting summary judgment for defendants on wrongful discharge and conspiracy claims by a UNC police officer who issued an underage drinking citation to the daughter of a University trustee. Plaintiff presented nothing more than conjecture to support his allegations of retaliation and there was no evidence of any agreement to unlawfully discharge plaintiff.

## 2. Public Officers and Employees— whistleblower claim—failure to exhaust administrative remedies

The trial court did not err by dismissing a UNC police officer's whistleblower claim for failure to exhaust administrative remedies where there was no question that he had unsuccessfully exercised his right to seek relief from the State Personnel Commission under N.C.G.S. § 126-34.1(a)(7) and did not seek judicial review. Although plaintiff contends that he could maintain an administrative action under N.C.G.S. § 126-34.1(a) (7) and an action in superior court under N.C.G.S. § 126-85, the only reasonable interpretation of these statutes is that a state employee may choose to pursue a whistleblower claim in either forum, but not both. Moreover, plaintiff did not include the required allegations that exhaustion of his administrative remedy would be futile, and, even if the two statutory provisions are assumed to be in para materia, N.C.G.S. § 126-34.1(a)(7) controls as the more recent enactment.

## 3. Constitutional Law— free speech—official capacities—adequate state remedy

A dismissed UNC police officer's state constitutional claim was properly dismissed where plaintiff brought a claim for

**SWAIN v. ELFLAND**

[145 N.C. App. 383 (2001)]

alleged constitutional violations against defendants in their official capacities and had an adequate state remedy available to him.

Appeal by plaintiff from order entered 13 December 1999 by Judge James C. Davis in Orange County Superior Court. Heard in the Court of Appeals 22 January 2001.

*McSurely & Osment, by Alan McSurely and Ashley Osment, for plaintiff appellant.*

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Ann Reed, Assistant Attorneys General Bruce S. Ambrose, and Richard E. Slipsky, for defendant appellees.*

SMITH, Judge.

The plaintiff, Lt. Edwin Swain, Jr., is employed as a police officer at the University of North Carolina at Chapel Hill. On 27 September 1997, plaintiff was assigned to an "Interdiction and Arrest" team at a football game at Kenan Stadium. The primary purpose of the team was to enforce the alcohol laws.

After the game, plaintiff observed a young woman, Caroline Hancock, holding what appeared to be a malt beverage. When plaintiff approached Hancock, a member of Hancock's party alerted her to plaintiff's presence. Hancock took the bottle and placed it in the back of a truck. Plaintiff told Hancock he saw her in possession of a malt beverage, asked her if it was a beer, and she replied affirmatively. Plaintiff then requested Hancock's driver's license, which listed her age as eighteen years old. Plaintiff proceeded to write her a citation for underage drinking. Soon thereafter, Hancock's father approached, and plaintiff informed him that he was citing Hancock. Hancock's father, Billy Armfield, was a member of the University Board of Trustees. Armfield asked plaintiff not to issue the citation, but plaintiff declined the request. Plaintiff then left and headed back to the police department.

After the game, Armfield protested his daughter's citation to University officials. Plaintiff's superior, Major Jeffrey McCracken, later communicated to plaintiff that there were questions regarding plaintiff's probable cause to issue the citation. On 29 September 1997, plaintiff reported for duty and entered Hancock's citation into the computer. According to plaintiff, Major McCracken ordered him to

turn over the copies of the citation to him, and tried to persuade him to withdraw the citation. The citation was later pulled from a stack of citations ready for transfer to a magistrate.

Plaintiff accused his superiors of obstruction of justice and refused to cooperate with them. On 31 September 1997, the citation was returned to the "judicial stream" and forwarded to the magistrate. Soon thereafter, plaintiff reported the alleged "coverup" to the media, and several news accounts appeared in the press. Plaintiff later filed a grievance to protest his supervisor's decisions, and requested an investigation into what he believed was improper police procedures and obstruction of justice. Plaintiff's grievances were denied.

On 30 October 1997, Major McCracken received information that plaintiff, while on duty, had visited the offices of the Chapel Hill News. Plaintiff was seen there between the hours of noon and 2:00 p.m., and he was not there on official UNC-CH business. Major McCracken later confirmed this information with Anne England, an employee at the newspaper. Plaintiff had not informed his dispatcher of his location during this time period. Major McCracken did not immediately confront plaintiff with this information and instead decided to wait and see whether plaintiff claimed the time as personal time on his timecard.

After plaintiff submitted his timecard, Major McCracken asked him about the time he spent at the newspaper on 30 October 1997. Plaintiff had not claimed the time as personal leave. Plaintiff's reply was "interesting" without further elaboration. Major McCracken then gave plaintiff the opportunity to change his timecard, but plaintiff refused. A pre-disciplinary conference was held on 17 November 1997, and plaintiff declined to provide any explanation for his timecard. On 19 November 1997, Major McCracken fired plaintiff.

Plaintiff filed the instant lawsuit on or about 2 December 1997 alleging: (1) violation of N.C. Gen. Stat. § 126-85 (1999), the "Whistleblower Act"; (2) wrongful discharge in violation of public policy and racial discrimination in violation of N.C. Gen. Stat. § 143-422.2 (1999); (3) violation of his state constitutional rights to free speech; and (4) a conspiracy by Carolyn Elfland, Major McCracken, and Drake Maynard to unlawfully discharge plaintiff from his employment. Shortly after plaintiff filed this action, his dismissal was rescinded by Chancellor Michael Hooker. Chancellor Hooker adopted the findings of an independent investigation which

found there was just cause for discipline, but that dismissal was too harsh a penalty. Plaintiff was reinstated but suspended for one week without pay.

On or about 23 December 1997, plaintiff filed a petition for a contested case hearing in the North Carolina Office of Administrative Hearings. Plaintiff alleged his suspension was without cause, and was the result of racial discrimination and retaliation. A hearing was held on 11-14 May 1998. On 31 July 1998, Judge Fred G. Morrison issued a Recommended Decision concluding that defendants had just cause to discipline plaintiff for unacceptable personal conduct, and that plaintiff was not the victim of illegal discrimination or retaliation. Accordingly, the suspension of plaintiff without pay for one week was affirmed. On 18 November 1998, the State Personnel Commission upheld the Recommended Decision. Plaintiff did not appeal.

On 27 October 1999, defendants moved for summary judgment in the instant case. On 13 December 1999, the trial court granted summary judgment to defendants. The trial court concluded that: (1) plaintiff's Whistleblower claim was dismissed due to plaintiff's failure to exhaust his administrative remedies; (2) plaintiff's wrongful discharge claim was dismissed due to plaintiff's failure to exhaust his administrative remedies; (3) plaintiff's state constitutional claims were dismissed because plaintiff had an adequate state remedy available, and thus his claim was lacking an essential element; and (4) summary judgment on all claims in the complaint was allowed on the ground that there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law. Plaintiff appealed.

I.

[1] We first consider whether the trial court erred in dismissing plaintiff's complaint on summary judgment because there was no genuine issue as to any material fact. Specifically, plaintiff challenges the trial court's dismissal of his claim of wrongful discharge, and his allegation that defendants conspired to unlawfully discharge him.

To establish a cause of action for wrongful discharge or demotion in violation of his right to freedom of speech, plaintiff must forecast sufficient evidence " 'that the speech complained of qualified as protected speech or activity' " and " 'that such protected speech or activity was the 'motivating' or 'but for' cause for his discharge or

demotion.' " *Warren v. New Hanover County Bd. of Education*, 104 N.C. App. 522, 525-26, 410 S.E.2d 232, 234 (1991) (quoting *Jurgensen v. Fairfax County*, 745 F.2d 868, 877-78 (4th Cir. 1984)). " '[T]he resolution of these two critical issues is a matter of law and not of fact.' " *Id. See also Evans v. Cowan*, 132 N.C. App. 1, 9, 510 S.E.2d 170, 175 (1999). The only motivation established by the competent evidence in the case *sub judice* was that plaintiff was dismissed due to the discrepancies in his timecard and his refusal to either amend his timecard or provide an explanation for the discrepancies.

Major McCracken, who was plaintiff's supervisor, and made the decision to dismiss plaintiff, testified that plaintiff's grievances over the ticket had "nothing to do" with the decision to dismiss plaintiff. In fact, Major McCracken testified that he took disciplinary action against plaintiff in spite of the publicity, not because of it. Major McCracken admitted that plaintiff's submission of the falsified time-card created a "terrible timing" problem, but that he "had to act on it." Chancellor Hooker testified that he concluded that plaintiff had violated policies, and although he believed the punishment of dismissal was too severe, there was no evidence to support a conclusion that any UNC-CH official was motivated to retaliate against plaintiff because he had gone to the newspapers. Chancellor Hooker also stated that the disciplinary action against plaintiff was in spite of all the attendant publicity, and not because of it.

"Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Lenzer v. Flaherty*, 106 N.C. App. 496, 510, 418 S.E.2d 276, 284, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992). Here, plaintiff presented nothing more than mere conjecture to support his allegations of retaliation. Accordingly, we conclude that the trial court properly dismissed plaintiff's retaliatory discharge claim.

Because plaintiff's underlying claims were properly dismissed, his allegation that defendants conspired to unlawfully discharge him must likewise fail. "A claim for conspiracy . . . cannot succeed without a successful underlying claim . . . ." *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 599, 534 S.E.2d 233, 236, *disc. review denied*, 353 N.C. 265, 546 S.E.2d 100 (2000). *See Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963) ("A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy . . . .").

Assuming *arguendo* that plaintiff had succeeded on his underlying claims, plaintiff has not pointed to any competent evidence in the record to support his allegations that defendants conspired to unlawfully discharge him, and our review of the record discloses no such evidence. This Court has stated:

> A civil conspiracy claim consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement resulted in injury to the plaintiff. Although an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury."

*Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998) (citations omitted) (quoting *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)), *aff'd*, 350 N.C. 90, 511 S.E.2d 304 (1999). Where such an agreement exists, " 'all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement.' " *Johnson v. First Union Corp.*, 128 N.C. App. 450, 459, 496 S.E.2d 1, 7 (1998) (quoting *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987)). In the case at bar, there is no evidence of any agreement among defendants to unlawfully discharge plaintiff. Carolyn Elfland testified that she did not make the decision to dismiss plaintiff, and did not instruct Major McCracken to dismiss him. Elfland was the Associate Chancellor for Auxiliary Services at the University and Major McCracken's supervisor. Drake Maynard, Senior Director of Human Resources, testified that he provided information about the disciplinary process to Elfland and Major McCracken, but played no role in the decision to dismiss plaintiff. Thus, there is no evidence that defendants acted in concert to willfully and intentionally discredit and discharge plaintiff in violation of his rights, only plaintiff's allegations based on mere suspicion. This assignment of error is overruled.

## II.

**[2]** We next consider whether the trial court erred in dismissing plaintiff's "Whistleblower" claim on the ground that plaintiff failed to exhaust his administrative remedies. Plaintiff argues that N.C. Gen. Stat. § 126-86 (1999) expressly authorizes superior court jurisdiction over a state employee's claim of retaliation for reports of governmental wrongs. Plaintiff asserts that he chose to sue in superior court

pursuant to N.C. Gen. Stat. 126-86, and there is "no exhaustion condition precedent." We are not persuaded by plaintiff's argument.

Two statutes provide avenues to redress violations of the Whistleblower statute. N.C. Gen. Stat. § 126-86 states that "[a]ny State employee injured by a violation of G.S. 126-85 may maintain an action in superior court . . . ." N.C. Gen. Stat. § 126-34.1(a)(7) (1999) provides that a State employee may file in the Office of Administrative Hearings a contested case for "[a]ny retaliatory personnel action that violates G.S. 126-85." Here, plaintiff alleged in his petition for a Contested Case Hearing that he had been retaliated against. Thus, it is without question that he exercised his right under N.C. Gen. Stat. § 126-34.1(a)(7) to seek relief from the State Personnel Commission of the alleged violation of the Whistleblower Act.

Under plaintiff's interpretation of the statutes at issue, he could maintain an administrative action and an action in superior court simultaneously. However, this would allow plaintiff two bites of the apple, could lead to the possibility that different forums would reach opposite decisions, as well as engender needless litigation in violation of the principles of collateral estoppel. *See University of Tennessee v. Elliott*, 478 U.S. 788, 797, 92 L. Ed. 2d 635, 645 (1986) ("[I]t is sound policy to apply principles of issue preclusion to the fact-finding of administrative bodies acting in a judicial capacity."). The only reasonable interpretation of these statutes is that a state employee may choose to pursue a Whistleblower claim in either forum, but not both. *See Hobbs v. Moore County*, 267 N.C. 665, 671, 149 S.E.2d 1, 5 (1966) ("If possible, the language of a statute will be interpreted so as to avoid an absurd consequence. A statute is never to be construed so as to require an impossibility if that result can be avoided by another fair and reasonable construction of its terms."). *Id.* (citations omitted).

Plaintiff chose to pursue an administrative action, the administrative law judge ruled against plaintiff, and plaintiff did not seek judicial review. *See Huang v. N.C. State University*, 107 N.C. App. 710, 715, 421 S.E.2d 812, 815 (1992) ("[T]he policy of requiring the exhaustion of administrative remedies prior to the filing of court actions 'does not require merely the initiation of prescribed administrative procedures, but that they should be pursued to their appropriate conclusion and their final outcome awaited before seeking judicial intervention . . . .' "). *Id.* (quoting 2 Am. Jur. 2d *Administrative Law* § 608 (1962)). Additionally, plaintiff did not allege in his complaint that exhaustion of his administrative remedy

SWAIN v. ELFLAND

[145 N.C. App. 383 (2001)]

would be futile. "The burden of showing the inadequacy of the administrative remedy is on the party claiming the inadequacy, and the party making such a claim must include such allegation in the complaint." *Id.* (citation omitted). Accordingly, we conclude that plaintiff has failed to exhaust his administrative remedies for this claim, and it was properly dismissed.

Even if we were to assume *arguendo* that the two provisions in question here are *in pari materia,* but are in irreconcilable conflict, the provisions of N.C. Gen. Stat. § 126-34.1(a)(7) would control, because it is the more recent enactment. This Court has stated:

Statutes *in pari materia,* although in apparent conflict or containing apparent inconsistencies, should, as far as reasonably possible, be construed in harmony with each other so as to give force and effect to each; but if there is an irreconcilable conflict, the latest enactment will control, or will be regarded as an exception to, or qualification of, the prior statute.

*State v. Hutson,* 10 N.C. App. 653, 657, 179 S.E.2d 858, 861 (1971); *see also Caudill v. Dellinger,* 129 N.C. App. 649, 655, 501 S.E.2d 99, 103 (1998), *aff'd in part, dismissed in part,* 350 N.C. 89, 511 S.E.2d 304 (1999). Thus, N.C. Gen. Stat. § 126-34.1(a)(7) would control and plaintiff's exclusive remedy would be administrative.

III.

**[3]** We next consider whether the trial court erred in dismissing plaintiff's state constitutional claim on the grounds that plaintiff had an adequate state remedy available to him, and thus, plaintiff was lacking an essential element of his claim. Plaintiff alleged in his complaint that his discharge "was made to chill his free speech rights." Plaintiff contended that "[t]he retaliatory discharge described here violates the public's interest in free expression to make decisions about public funds and policies. If this retaliatory discharge is declared constitutional, it would create a chilling wind against plaintiff, other police officers, and other employees of this and other public institutions." Plaintiff then stated he was bringing his claim directly against defendants, under the North Carolina Constitution, because no other legal remedy was available to him. We disagree with plaintiff's arguments.

Plaintiff's complaint seeks a monetary remedy for alleged state constitutional violations by defendants. "Such a claim is commonly called a '*Corum* claim.'" *Ware v. Fort,* 124 N.C. App. 613, 616, 478

S.E.2d 218, 220 (1996). *See Corum v. University of North Carolina,* 330 N.C. 761, 413 S.E.2d 276, *cert. denied sub. nom. Durham v. Corum,* 506 U.S. 985, 616, 121 L. Ed. 2d 431 (1992). To the extent that plaintiff alleges a *Corum* claim against defendants in their individual capacity, the claim must be dismissed. *See id.* at 789, 413 S.E.2d at 293 (A claim for monetary relief under the North Carolina Constitution can be brought against a person only in their official capacity.).

To the extent that plaintiff sued defendants in their official capacity, we conclude that plaintiff had an adequate state remedy available to him, and in fact pursued that remedy. Plaintiff raised his free speech claim at his administrative hearing, both explicitly and by implication under a "just cause" analysis. Plaintiff alleged he was disciplined in retaliation for speaking out on an issue of public concern, in violation of his state constitutional right to free speech. However, the administrative law judge concluded that there was just cause for the discipline against plaintiff, that plaintiff was not a victim of retaliation, and that plaintiff was not retaliated against for exercising his right to free speech. The State Personnel Commission adopted the administrative law judge's decision, and plaintiff did not appeal. Accordingly, we hold that plaintiff's "*Corum* claim" was properly dismissed by the trial court.

Affirmed.

Chief Judge EAGLES and Judge HUDSON concur.