UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

HOWARD PERRY AND WALSTON
REALTY, INCORPORATED,
                    *Plaintiff-Appellant,*

v.                                                           No. 02-1918

MEREDITH CORPORATION; GMAC
HOME SERVICES, INCORPORATED,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-01-551-5-BO-2)

Argued: June 4, 2003

Decided: July 25, 2003

Before MICHAEL and MOTZ, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curium opinion.

## COUNSEL

**ARGUED:** Beatrice Joan Davis, HOWARD, STALLINGS, FROM
& HUTSON, P.A., Raleigh, North Carolina, for Appellant. Robert
Martin Callagy, SATTERLEE, STEPHENS, BURKE & BURKE,

L.L.P., New York, New York, for Appellee Meredith; Norman M. Leon, PIPER RUDNICK, Chicago, Illinois, for Appellee GMAC. **ON BRIEF:** Joseph H. Stallings, HOWARD, STALLINGS, FROM & HUTSON, P.A., Raleigh, North Carolina, for Appellant. Suzanne E. Kaiser, SATTERLEE, STEPHENS, BURKE & BURKE, L.L.P., New York, New York, for Appellee Meredith; Catherine Burkhardt, PIPER RUDNICK, Chicago, Illinois; James L. Gale, SMITH MOORE, L.L.P., Raleigh, North Carolina, for Appellee GMAC.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Howard Perry and Walston Realty, Inc. (Walston) entered into a contract with the Meredith Corporation (Meredith) for the use of Meredith's Better Homes & Gardens trade mark and related services. During the term of the contract, Meredith sold and assigned its rights and obligations under the contract to GMAC Home Services (GMAC). Walston then entered a franchise arrangement with another party. Walston's relationship with GMAC was then terminated.

Walston filed this action against Meredith and GMAC claiming breach of contract, unfair and deceptive trade practices, negligent misrepresentation, gross negligence, intentional misrepresentation and fraud, and conspiracy. Walston also claimed that GMAC was unjustly enriched.

Meredith and GMAC moved to dismiss. Fed.R.Civ.P. 12(b)(6). The district court dismissed Walston's complaint. We affirm.

I

We have jurisdiction under 28 U.S.C. § 1291. *Chaudry v. Mobil Oil Corp.*, 186 F.3d 502 (4th Cir. 1999). We review claims dismissed

pursuant to Fed.R.Civ.P. 12(b)(6) *de novo*. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Walston-Meredith contract provides that substantive claims shall be construed in accordance with North Carolina law.

## II

The Walston-Meredith contract was scheduled to terminate in 1998. In 1998, the contract term was extended through April 4, 1999 by written amendment. In 1998, Meredith discussed the sale of Better Homes & Gardens service to GMAC. The sale proposal provided that GMAC would acquire the rights and assume the obligations of Meredith. The parties reached agreement and Meredith privately communicated news of the sale to Walston. In July 1998, the fact of sale and transfer were made known to the public.

The Meredith-GMAC sale and transfer licensed the Better Homes & Gardens marks to GMAC for a period of ten years. GMAC delivered to Walston a proposed renewal contract in 1999. Walston did not accept or execute the proposed renewal contract. Walston continued to pay for and use the Better Homes & Gardens mark and services until 2000, when Walston notified GMAC of Walston's intent to end the use of the mark and services.

The Walston-Meredith contract states that, "this contract is the entire agreement of the parties." In *Opsahl v. Pinehurst Inc.*, 344 S.E.2d 68, 74 (N.C. 1986), the North Carolina Court of Appeals holds that "the parol evidence rule applied to exclude parol testimony where the written contract included a merger or integration clause which stated that '[t]his instrument constitutes *the entire agreement between the parties* . . . .' " *Id.* (emphasis added) (internal citations omitted).

Because of the integration provision and the amendment we are required to initially identify the precise terms of the agreement which covers the parties' business relationship.

The terms of the Walston-Meredith contract extend into the 1998 amendment because "The making of a second contract dealing with the subject matter of an earlier one does not necessarily abrogate the

former contract." *Commercial Nat. Bank of Charlotte v. Charlotte Supply Co.*, 38 S.E.2d 503, 509 (N.C. 1946) (internal citations omitted). Abrogating the Walston-Meredith contract would require any amendment to "present such inconsistencies with the first contract that the two cannot in any substantial respect stand together." *Id.* at 510. The modifications made by the 1998 amendment are to the termination procedure of Walston, and the duration of the contract.

Walston looks to the termination provision to dispute the term extension of the amendment. The time span of the term extension is stated separately and clearly as running until April 4, 1999. Except for this modification there are no inconsistencies that would abrogate any other part of the Walston-Meredith contract.

The Walston-Meredith contract as amended, contains the complete agreement of Walston and Meredith, and the amendment abrogates no significant part of the contract except to extend the term until April 4, 1999.

### III

Walston argues that Meredith was in breach of contract when it sold to GMAC the rights and obligations under the Walston-Meredith contract including the license to use the Better Homes & Gardens mark. Walston also claims that the proposed renewal contract and an offering circular tendered by GMAC were not those required by the Walston-Meredith contract as amended.

The Walston-Meredith contract makes it clear that Meredith "shall have the right to transfer or assign all or any part of its rights or obligations under this Contract to any person or legal entity." Walston argues that the sale to GMAC was restricted because it would end the Better Homes & Gardens mark. Walston claims an indefinite right to use the mark by way of renewal. Walston can only claim a right to use the mark within the time frame of the contract as amended. The Better Homes & Gardens mark remained available to Walston for the duration of the contract as amended.

Walston argues that the licensing of the mark to Meredith in conjunction with the sale of the Contract and service violated a contrac-

tual duty of Meredith to "protect and defend the Marks in order to maintain their value to Member and Better Homes and Gardens", because it was GMAC's intention to phase out the Better Homes & Gardens mark.

Walston acknowledges that GMAC stopped sub-licensing the Better Homes & Gardens mark and discontinued advertising and promotion of Better Homes & Gardens in 2000. The Walston-GMAC contract as amended ran only until April 4, 1999. Walston's claim cannot succeed because it seeks damages for lack of performance beyond the contract term.

In April 1999, GMAC proposed a renewal agreement to Walston as directed by the Walston-GMAC contract. The amended Walston-Meredith contract states that "Member [Walston], if not in breach, will execute a new Contract in the form then being offered by *Better Homes and Gardens*. The renewal contract may *(i)* contain materially different terms than this Contract." If not executed, the Walston-GMAC contract states, "If Member continues to use the Marks after the expiration date of this Contract but has failed to execute a renewal Contract or provide notice of non-renewal to *Better Homes and Gardens*, Member will be deemed to be operating on a month-to-month basis under the terms and conditions of the renewal Contract offered Member by *Better Homes and Gardens*."

Walston acknowledges that GMAC proposed a franchise agreement in 1999. Walston argues that the proposed renewal agreement was not acceptable because it contained materially different terms than the Walston-Meredith contract as amended. The Walston-Meredith contract as amended allowed for materially different terms. Walston did not execute the proposed renewal, and continued to use the Better Homes & Gardens mark and service beyond the April 4, 1999 termination date. Walston's continued use of the mark and service was permitted under the terms of the renewal contract only on a month-to-month basis.

IV

Walston claims unfair and deceptive trade practices based on the reasoning of *Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643 (N.C.

App. 1990). In *Forbes*, the basis for the claim was alleged conduct inconsistent with the terms of an executed contract. Walston fails to make any claim of conduct by either Meredith or GMAC that is inconsistent with that allowed by the express terms of the Walston contract with Meredith or with GMAC. *Forbes'* reasoning does not apply.

V

Walston also claims unfair and deceptive trade practices because Meredith did not provide an offering circular in connection with executing the contract amendment in violation of 16 C.F.R. § 436.2. Walston concedes that an offering circular is not required for a franchisee that renews or extends a franchise contract unless the new relationship is under terms and conditions materially different from an existing agreement. The amendment's only significant change from the original contract is term extension. No other part of the contract was abrogated by execution of the amendment. There were no different material terms about which Walston was entitled to notice in an offering circular.

VI

Walston generally combines its negligent and intentional misrepresentation, gross negligence, and fraud claims as a single claim. Walston alleges that Meredith promised never to sell the Better Homes & Gardens service and mark. The Walston-Meredith contract expressly states that Meredith may sell to any person or legal entity.

The misrepresentation and fraud claims are without merit on both contract grounds and on a limitations bar.

VII

Walston claims injury from an illegal conspiracy which existed between Meredith and GMAC. This theory is predicated on Walston's claim of breach of contract and fraud. As we have explained, the breach of contract and misrepresentation and fraud claims are without merit as a matter of law. A conspiracy requires: (1) an agreement

between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which results in injury to the plaintiff. *See Swain v. Elfland*, 550 S.E.2d 530 at 534 (N.C. App. 2001). *Delk v. ArvinMeritor, Inc.*, 179 F.Supp.2d 615 (W.D.N.C. 2002). A conspiracy claim requires a successful underlying claim. *See Swain*, 550 S.E.2d at 534 ("[B]ecause plaintiff's underlying claims were properly dismissed, his allegation that defendants conspired [to unlawfully discharge him] must likewise fail. 'A claim for conspiracy . . . *cannot succeed without a successful underlying claim. . . .*'") (internal citations omitted) (emphasis added). Because Walston's underlying claims of breach of contract and misrepresentation and fraud have not succeeded, Walston's conspiracy claim lacks the required underlying claim.

## VIII

Walston's final claim is that GMAC was unjustly enriched. This claim fails if there is an express agreement between the parties. *See Lagies v. Myers*, 542 S.E.2d 336 (N.C. App. 2001), *see also Whitfield v. Gilchrist*, 497 S.E.2d 412, 415 (N.C. 1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment."). The Walston-Meredith contract as amended was an express final agreement. From 1999 onward, Walston operated under the extended term of the Walston-Meredith contract on a month-to-month basis. At all relevant times there was an express agreement in force.

*AFFIRMED*