JANE P. HELM, PLAINTIFF v. APPALACHIAN STATE UNIVERSITY, AND KENNETH E. PEACOCK, IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF APPALACHIAN STATE UNIVERSITY, DEFENDANTS

No. COA08-30

(Filed 16 December 2008)

**1. Public Officers and Employees— whistleblower action— termination of university employee—refusal to purchase real estate option**

The trial court properly dismissed a whistleblower action for failure to state a claim where plaintiff was terminated as a university vice chancellor for business after she objected to the purchase of a real estate option from a friend of a trustee when she knew that the university would not have the funds to purchase the property within the option period. Although plaintiff argued that the chancellor's pursuit of the option constituted misappropriation of state resources, an option has an inherent, intrinsic value distinct from the purchaser's ability to exercise it. Plaintiff did not sufficiently allege that she was engaged in a protected activity under the Act.

**2. Constitutional Law— objection to real estate option purchase—transaction not misconduct—adequate state remedy**

It was not necessary to consider plaintiff's constitutional claims arising from her dismissal as a university vice chancellor after she refused to buy an option on real estate for the univer-

sity. It was decided elsewhere in the opinion that the option had value and that defendants' pursuit of the option did not constitute misconduct; moreover, the Whistleblower Act creates an adequate state remedy and precludes plaintiff's claims.

### 3. Immunity— sovereign—whistleblower claim against university—12(b)(6) dismissal

The issue of whether a whistleblower claim against a state university was properly dismissed on sovereign immunity was not reached where it had already been determined that the trial court properly dismissed plaintiff's complaint for failure to state a claim under Rule 12(b)(6).

### 4. Pleadings— motion to amend—not properly made

The trial court did not err by denying plaintiff the opportunity to amend her complaint where she did not make a proper motion to amend, either orally or in writing. Moreover, assuming a motion to amend, plaintiff did not show any abuse of discretion in its denial.

### 5. Civil Procedure— 12(b)(6) dismissal—no findings or conclusions

The trial court did not err by refusing to make findings and conclusions explaining a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6).

Judge CALABRIA concurring in part and dissenting in part.

Appeal by plaintiff from order entered 28 August 2007 by Judge Mark E. Powell in Watauga County Superior Court. Heard in the Court of Appeals 20 August 2008.

*Patterson Harkavy, LLP, by Jessica E. Leaven and Burton Craige, for plaintiff.*

*Attorney General Roy Cooper, by Assistant Attorney Generals John P. Scherer II and Kimberly D. Potter, for defendants.*

ELMORE, Judge.

Jane P. Helm (plaintiff) asserted claims against her former employer, Appalachian State University (defendant Appalachian State or the university) and its Chancellor, Kenneth E. Peacock (defendant Peacock), in his official capacity for violations of the North Carolina Whistleblower Act (the Whistleblower Act) and the

North Carolina Constitution. She appeals from a 28 August 2007 order dismissing her complaint with prejudice. For the reasons stated below, we affirm the order of the trial court.

I. Background

Plaintiff alleged the following facts in her 31 May 2007 complaint: Plaintiff became the Vice Chancellor for Business Affairs at defendant Appalachian State in 1994. Her duties included managing the university's business and financial affairs, including oversight of some campus construction. During her tenure at the university, plaintiff performed her professional duties in a satisfactory manner and her employment file contained no complaints or disciplinary actions. In 2004, defendant Peacock became plaintiff's supervisor.

In early May 2006, defendant Peacock asked plaintiff to issue a non-refundable $10,000.00 check from the University Endowment Fund to Michael Cash "to obtain an option to purchase real property for $475,000 that could be exercised on or before September 1, 2006." In 2005, Cash had approached James M. Deal, Jr., who was a member of the university's Board of Trustees, to ask if the university was interested in purchasing a 10.889 acre property in Boone (the property). Cash and Deal had a prior business or personal relationship and, in May 2006, either Cash or Deal informed defendant Peacock that "Cash was in need of funds to pay his mortgage on this real property."

Plaintiff informed defendant Peacock that "there were insufficient funds for [the university] to exercise the option on or before September 1, 2006." Defendant Peacock instructed "plaintiff to pay Mr. Cash the $10,000 because Mr. Cash needed the money to pay his mortgage." Plaintiff again refused, explaining that the University Endowment Fund did not have sufficient funds to exercise the option and that "paying $10,000 to Mr. Cash under these circumstances would be an inappropriate use of state funds."

Plaintiff then complained to a university attorney, David Larry, and expressed her belief that "paying $10,000 to Mr. Cash would be an inappropriate use of state funds because the $10,000 would be used to pay his mortgage and there were insufficient funds to exercise the option." Larry responded, "Do you think he would ever admit he said that in a court of law?"

Defendant Peacock's Chief of Staff, Lorin Baumhover, later informed plaintiff that "he could obtain the $10,000 for the option from the Provost if plaintiff could come up with the $465,000 to exer-

cise the option." Plaintiff maintained that there were insufficient funds to exercise the option and that sufficient funds would not be available by September 2006, when the option expired. "Mr. Baumhover responded that defendant Peacock wanted this to happen. He also stated that Mr. Cash had sent several e-mails saying he needed to make his mortgage payment."

On 2 June 2006, the Endowment Committee of the university's Board of Trustees approved the purchase of the option for $10,000.00; plaintiff abstained from the vote. That day, defendant Peacock requested a meeting with plaintiff, during which he told her that he had been "uncomfortable" working with her for a year and a half. Plaintiff expressed surprise, noting that defendant Peacock had made only positive comments to her about her work performance. Plaintiff told defendant Peacock that she wished to continue working and asked how she could improve their working relationship; defendant Peacock replied that there was nothing that she could do and that she was "not a team player." Defendant Peacock then asked plaintiff for her resignation effective 30 June 2006. Plaintiff responded that she was "devastated" and concerned that she would not be able to find another comparable job because she was sixty-three years old. "Defendant Peacock explained that this decision had nothing to do with her work performance, which was outstanding."

Plaintiff chose early retirement over resignation and informed defendant Peacock via the following e-mail:

> I have decided to retire rather than resign from [the university]. Because of the time required to process both the state retirement and social security payments, I am requesting that I be placed on paid administrative leave for three months. It is critical that I have benefits during this time.

Defendant Peacock replied by e-mail that he would honor her request for continued benefits and prepare her administrative leave paperwork. Plaintiff maintains that she "was forcibly separated, not voluntarily retired," from the university and that her termination has caused her to suffer ongoing financial hardship. She also alleged in her complaint that the university purchased the option from Cash for $10,000.00 but did not exercise the option.

In her complaint, plaintiff alleged that defendants violated the Whistleblower Act by unlawfully retaliating against her, discriminating against her, and discharging her because she reported defendant Peacock's inappropriate conduct to Larry and refused to "carry out

defendant Peacock's directive to pay Mr. Cash $10,000," which she characterized as an "inappropriate use of state funds." Plaintiff also asserted violations of her rights to equal protection, due process, and freedom of speech under sections 14, 19, and 32 of Article I of the North Carolina Constitution.

Defendants then moved to dismiss for failure to state a claim. Plaintiff voluntarily dismissed her due process claim pursuant to Rule 41(a)(1). After a hearing, the trial court dismissed the remainder of plaintiff's claims by written order. Plaintiff now appeals, alleging (1) that her complaint stated valid claims for relief under the Whistleblower Act and the North Carolina Constitution, (2) that defendants are not entitled to sovereign immunity, (3) that the trial court should have permitted plaintiff to amend her complaint under Rule 15(a), (4) that the trial court should have granted plaintiff's request that the dismissal be entered without prejudice, and (5) that the trial court erred by refusing to make findings of fact and conclusions of law.

## II. Failure to State a Claim

**[1]** We review the trial court's dismissal for failure to state a claim by inquiring

> whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. Rule 12(b)(6) generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery. Dismissal is proper, however, when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Newberne v. Department of Crime Control & Pub. Safety,* 359 N.C. 782, 784-85, 618 S.E.2d 201, 203-04 (2005) (quotations and citations omitted).

### A. Whistleblower Act

Plaintiff first argues that she sufficiently pled all three elements of her Whistleblower Act claim. We disagree. The Whistleblower Act provides, in relevant part:

(a) No . . . State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a State employee . . . because the State employee . . . reports or is about to report, verbally or in writing, any activity described in G.S. 126-84, unless the State employee knows or has reason to believe that the report is inaccurate.

(a1) No State employee shall retaliate against another State employee because the employee . . . reports or is about to report, verbally or in writing, any activity described in G.S. 126-84.

(b) No . . . State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a State employee . . . because the State employee has refused to carry out a directive which in fact constitutes a violation of State or federal law, rule or regulation or poses a substantial and specific danger to the public health and safety.

(b1) No State employee shall retaliate against another State employee because the employee has refused to carry out a directive which may constitute a violation of State or federal law, rule or regulation, or poses a substantial and specific danger to the public health and safety.

N.C. Gen. Stat. § 126-85(a)-(b1) (2007). Section 126-84 states as policy that State employees are encouraged to report "evidence of activity by a State agency or State employee constituting . . . [a] violation of State or federal law, rule or regulation[,] . . . [m]isappropriation of State resources[,] or . . . [g]ross mismanagement, a gross waste of monies, or gross abuse of authority." N.C. Gen. Stat. § 126-84(a)(1), (3), (5) (2007).

Accordingly, to sufficiently state a claim under the Whistleblower Act, a plaintiff must allege the following elements: "(1) that the plaintiff engaged in a *protected activity*, (2) that the defendant took adverse action against the plaintiff in his or her employment, *and* (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." *Newberne*, 359 N.C. at 788, 618 S.E.2d at 206 (emphases added).

Plaintiff has not sufficiently alleged that she was engaged in any "protected activity" within the meaning of the statute. She avers that because there were insufficient funds *to exercise* the option and that no sufficient funds would become available before the option

expired, "the option was essentially worthless" to the university. Plaintiff argues that defendant Peacock's pursuit of this "worthless option" constituted a misappropriation of state resources, gross mismanagement, gross abuse of authority, and a violation of the exclusive emoluments clause of the North Carolina Constitution.[1] Because the option was not "worthless," we cannot agree that its pursuit or purchase constituted a protected activity under the Whistleblower Act.

> An option . . . is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a certain time. It is in legal effect an offer to sell, coupled with an agreement, to hold the offer open for acceptance for the time specified, *such agreement being supported by a valuable consideration*, or, at common law, being under seal, so that it constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified.

*Kidd v. Early*, 289 N.C. 343, 360, 222 S.E.2d 392, 404 (1976) (quotations and citations omitted; alteration in original; emphasis added). This Court has previously explained that "[a]n option to buy or sell land, more than any other form of contract, contemplates a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value." *Rainbow Props. v. Wilkinson*, 147 N.C. App. 520, 523, 556 S.E.2d 11, 13-14 (2001) (quoting *Texaco, Inc. v. Creel*, 310 N.C. 695, 706, 314 S.E.2d 506, 512 (1984)) (additional citation omitted). In other words, an option to buy or sell land has an inherent, intrinsic value distinct from its purchaser's ability to exercise it: the purchaser may specifically enforce a sale upon the terms of the option. That the university may or may not have had the funds in the future to exercise the option at the time it was purchased did not affect the option's value. Likewise, that plaintiff did not anticipate acquiring sufficient funds to exercise the option before its expiration also did not affect the option's value.

Accordingly, we hold that plaintiff's complaint failed to sufficiently allege that she was engaged in a "protected activity" and, therefore, the trial court properly dismissed her Whistleblower Act action for failure to state a claim.

---

1. The exclusive emoluments clause states, "No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. Art. I, § 32.

B. Constitutional Claims

[2] Plaintiff next argues that she adequately alleged a free speech claim, an equal protection claim, and an exclusive emoluments claim, and that she has no adequate state remedy for these violations. Again, we disagree. The basis for all of these claims is that defendant Peacock's pursuit of the option constituted some form of misconduct or that the option's purchase was a sham transaction. Having determined that the option had value and that therefore defendant Peacock's pursuit of the option did not constitute misconduct, mismanagement, or misappropriation, it is unnecessary to further address plaintiff's constitutional claims based on that alleged misdeed.

Moreover, we note that the Whistleblower Act creates an adequate remedy under state law and thereby precludes any action at common law, including defendant's constitutional claims. "[O]fficials and employees of the State acting in their official capacity are subject to direct causes of action by plaintiffs whose constitutional rights have been violated." *Corum v. University of North Carolina*, 330 N.C. 761, 783-84, 413 S.E.2d 276, 290 (1992) (citations omitted).

In *Swain v. Elfland*, we held that the plaintiff's contested case hearing for wrongful termination under N.C. Gen. Stat. §§ 126-34.1 and 126-86 was an adequate state remedy that precluded a direct cause of action for violation of the plaintiff's right to free speech under the North Carolina Constitution. 145 N.C. App. 383, 391, 550 S.E.2d 530, 536 (2001). Here, plaintiff's claim under N.C. Gen. Stat. § 126-86 is an adequate state law remedy for her alleged free speech violation. Similarly, her claim of misappropriation of state funds is expressly covered by N.C. Gen. Stat. § 126-84 and thus is an adequate state law remedy for her exclusive emoluments clause claim. Finally, because her equal protection claim alleges discrimination based on activities protected by the Whistleblower Act, it is also precluded.

II. Sovereign Immunity

[3] Plaintiff next argues that to the extent that the trial court based dismissal upon the ground of sovereign immunity, the dismissal was in error. The order does not specify the grounds upon which it based its dismissal; it states only that the "matter came on for hearing on August 13, 2007, on Defendants' Motion to Dismiss pursuant to N.C.R. Civ. P. Rule 12(b)(1), 12(b)(2), and 12(b)(6)," and that "[h]aving considered the complaint," the trial court granted defendants' motion and dismissed plaintiff's complaint with prejudice. Having already

determined that the trial court properly dismissed plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of our Rules of Civil Procedure, it is unnecessary to determine whether the trial court had a second valid ground on which to base its dismissal. *See Estate of Fennell v. Stephenson,* 354 N.C. 327, 334, 554 S.E.2d 629, 633 (2001) (stating that the trial court erred by dismissing the plaintiff's complaint on the ground of sovereign immunity, but nevertheless upholding the dismissal on other grounds).

III. Motion to Amend

**[4]** Plaintiff next argues that the trial court erred by denying her "the opportunity to amend her complaint to address any allegations which were omitted." During the 13 August 2007 motion to dismiss hearing, plaintiff's counsel made the following request to amend the complaint:

> [I]f for some reason [plaintiff's claims] were going to be dismissed, Plaintiff would ask that we be allowed the opportunity to allege more specific items if the Court felt that is necessary. Plaintiff does not feel that is the case, because she has specifically alleged violations of her rights to free speech, her fundamental rights under the protection clause, as well as her rights of the emoluments provision.

After plaintiff learned that the trial court planned to dismiss the complaint, she drafted a written notice to amend in the form of a letter to Judge Powell. The 15 August 2007 letter states, in relevant part:

> As requested during oral argument on the Motion, plaintiff again asks for the opportunity to amend the complaint under Rule 15(a) prior to entry of dismissal. Plaintiff respectfully requests your grounds for the dismissal so that plaintiff may address the deficiencies in her complaint "without prejudice" and specifying that a new action based on the same claims may be commenced within one year after the dismissal as permitted by Rule 41(b) of the North Carolina Rules of Civil Procedure.

Rule 15(a) provides:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. *Otherwise a party*

*may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.* A party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders.

N.C. Gen. Stat. § 1A-1, Rule 15(a) (2007) (emphasis added). Plaintiff argues that the trial court disregarded her motion to amend and improperly ruled on defendant's motion to dismiss before ruling on plaintiff's oral and written requests to amend. Defendant counters that plaintiff never made an oral motion to amend or filed a proper written motion to amend.

" 'A motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse.' " *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 486, 593 S.E.2d 595, 601 (2004) (quoting *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)). In *Hunter*, we held that the "plaintiffs' oral offer that they 'would be willing to amend the petition and get more facts' at the Rule 12(b)(6) hearing is not a sufficient request for leave to amend." *Id.* at 486, 593 S.E.2d at 602. The ambiguous language of plaintiff's alleged oral motion is similar to the rejected language in *Hunter*. Here, plaintiff's alleged request to amend was contingent upon the trial court's dismissal of the case and did not adequately inform either the trial court or defendants that she truly intended to amend her complaint; instead, as in *Hunter*, she indicated a mere willingness to amend her complaint. Moreover, the trial judge did not comment on plaintiff's alleged request before adjourning the hearing. The alleged request came in the middle of a four-page monologue by plaintiff's counsel and it does not appear from the transcript that counsel expected any response from the trial judge. She did not raise the issue again during the hearing. *See Wood v. Wood*, 297 N.C. 1, 6-7, 252 S.E.2d 799, 802 (1979) (holding that the trial court erred by denying the plaintiff's oral motion to vacate a divorce judgment on the basis of the oral motion's failure to meet the requirements of motion practice because "the judge was fully aware of the basis for plaintiff's motion" and so indicated during the hearing).

Plaintiff's written motion to amend must conform with Rule 7(b), which states, in relevant part:

(1) An application to the court for an order shall be by motion which . . . shall be made in writing, shall state with par-

ticularity the grounds therefor, and shall set forth the relief or order sought.

(2) The rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules.

N.C. Gen. Stat. § 1A-1, Rule 7(b)(1)-(2) (2007). Rule 10 sets out the form requirements for pleadings, which also apply to motions as stated in Rule 7(b)(2). Rule 10 states, in relevant part:

(a) *Caption; names of parties.*—Every pleading shall contain a caption setting forth the division of the court in which the action is filed, the title of the action, and a designation as in Rule 7(a). . . . [I]t is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

(b) *Paragraphs; separate statement.*—All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings.

N.C. Gen. Stat. § 1A-1, Rule 10(a)-(b) (2007).

Here, plaintiff's alleged motion took the form of a letter addressed to the trial judge and copied to defense counsel. The letter contains no designation, caption, or numbered paragraphs. According to the record on appeal, the letter was not filed with the trial court. Plaintiff's alleged written motion did not meet the requirements of a written motion to amend under Rules 7 and 10 of our Rules of Civil Procedure and there is no evidence in the record on appeal to indicate that the trial judge interpreted the letter as a written motion to amend. Accordingly, we hold that the trial court did not err by failing to address plaintiff's alleged motions to amend. Even assuming *arguendo* that the letter could be construed as a motion to amend, plaintiff has failed to show any abuse of discretion in the trial court's decision to not allow the amendment.

V. Dismissal Without Prejudice

Plaintiff next argues that the trial court erred by failing to grant plaintiff's request that the dismissal be entered without prejudice. Again, plaintiff bases her argument on her 15 August 2007 letter to the

trial judge. As explained above, the trial judge did not rule on this communication because it was not a motion. Accordingly, we over-rule this assignment of error.

VI. Findings of Fact and Conclusions of Law

**[5]** Plaintiff last argues that the trial court erred by refusing to make findings of fact and conclusions of law explaining its dismissal. Plaintiff requested that the court make findings of fact and conclusions of law as provided in Rule 52(a). Rule 52(a) provides, in relevant part, that "[f]indings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2007). However, we have held that "Rule 52(a)(2) does not apply to the trial court's dismissal of plaintiff's *quantum meruit* claim since it was based only on plaintiff's pleadings under Rule 12(b)(6)." *G & S Business Services v. Fast Fare, Inc.*, 94 N.C. App. 483, 490, 380 S.E.2d 792, 796 (1989) (citation omitted). In *G & S Business Services*, the trial court refused the plaintiff's request for findings of fact and conclusions of law explaining the court's dismissal of its *quantum meruit* claim. *Id.* at 489, 380 S.E.2d at 796. Here, as in *G & S Business Services*, the trial court's decision was based only on plaintiff's pleadings under Rule 12(b)(6). Furthermore, because we review a dismissal for failure to state a claim *de novo*, we would have disregarded any findings of fact or conclusions of law drafted by the trial court. Accordingly, we hold that the trial court did not err by declining to draft findings of fact and conclusions of law explaining its decision to dismiss plaintiff's complaint pursuant to Rule 12(b)(6).

Affirmed.

Judge TYSON concurs.

Judge CALABRIA concurs in part and dissents in part by separate opinion.

CALABRIA, Judge, concurring in part and dissenting in part.

I concur with the majority affirming the trial court's dismissal of plaintiff's constitutional claims. However, since plaintiff's allegations were sufficient to support her claim that she was engaged in a protected activity as defined by the Whistleblower Act, N.C. Gen. Stat.

§ 126-85 (2007), I respectfully dissent from the majority's holding that plaintiff failed to state a claim under the Act.

The majority holds that as a matter of law the formation of an option contract, or the receipt of any value at all, precludes a finding that defendant Peacock violated state law, committed fraud, misappropriated state resources, committed gross mismanagement or a gross waste of public funds. The majority further holds that the reporting of this conduct by plaintiff is not protected conduct under the Whistleblower Act. Such a bright line rule is contrary, not only to the intent, but also to the plain language of the statute, and therefore I disagree.

Plaintiff alleges that she was asked to resign for two reasons: she refused to issue a check for $10,000 from the University Endowment Fund to purchase an option that she knew the University had insufficient funds to exercise, and she reported her objection to the transaction to David Larry, a University attorney.

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007) the trial court must deny a motion to dismiss a claim if, "as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Newberne v. Dep't of Crime Control and Public Safety*, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005) (quoting *Meyer v. Walls*, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). I would hold that plaintiff's allegations, if accepted as true, are sufficient to show a violation of state law, a misappropriation of state resources, or a gross waste of public funds, and therefore the trial court erred by granting defendants' motion.

Misappropriation of State Resources/Waste of Public Funds

I agree with the majority opinion that an option contract has value as a matter of law because it confers a legally enforceable right to the holder of the option. However, contrary to the holding of the majority, a contract with a corresponding value to the state does not, by law, make that contract an appropriate use of state resources and public funds. If we were presented facts showing that the administrator had asked plaintiff to purchase a hammer from Michael Cash

**HELM v. APPALACHIAN STATE UNIV.**

[194 N.C. App. 239 (2008)]

for $10,000, instead of an option contract to purchase land, the majority's reasoning would still mandate a dismissal of plaintiff's Whistleblower Act claim. In exchange for the State's $10,000, the State would receive the legally enforceable right to possess a hammer that has some value, even though spending $10,000 for a hammer would be a misappropriation of state resources and a gross waste of public funds.

If, as plaintiff alleges, the University was financially incapable of exercising the option contract before it expired, it would not hold any more value to the University than would the hammer in the above hypothetical. While the enforceable right to purchase does have theoretical value, its value under the facts as alleged by the plaintiff does not justify the expenditure of $10,000 from the public funds. Furthermore, the majority reasoning is at odds with the intent of the Whistleblower Act, and in effect prohibits its application to employees reporting the mismanagement of public funds.

The Endowment Fund

N.C. Gen. Stat. § 116-36 authorizes the board of trustees of each constituent institution of the University of North Carolina, such as defendants, to establish an endowment fund for that institution "to the end that the institution may improve and increase its functions, may enlarge its areas of service, and may become more useful to a greater number of people." N.C. Gen. Stat. § 116-36(b) (2007). "The proceeds and funds described by this section are appropriated and may be used only as provided by this section." N.C. Gen. Stat. § 116-36(l) (2007).

In the instant case, plaintiff alleged the option could not improve or increase the functions of the University, could not enlarge its areas of service, or become useful to a greater number of people. If plaintiff's allegations are accepted as true, the option to purchase real property failed to fulfill the purposes for endowment fund appropriations and proceeds as outlined in N.C. Gen. Stat. § 116-36, and therefore violates state law.

Exclusive Emoluments Clause

N.C. Const. Art. I, § 32 ("Exclusive Emoluments Clause") states that "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." In interpreting this clause our Supreme Court has said "[t]his constitutes a specific constitutional prohibition against

gifts of public money . . . ." *Brown v. Board of Comm'rs*, 223 N.C. 744, 746, 28 S.E.2d 104, 105 (1943).

Even if the University had the ability to exercise the option before the September 2006 expiration date, plaintiff alleged facts tending to show that this option contract was not in consideration of obtaining the option, but rather a gift to Michael Cash to enable him to pay his mortgage. If true, this too would be a misappropriation of state resources, and a violation of the Exclusive Emoluments Clause.

The present case is a factual dispute over whether the business transaction to obtain the option to purchase land was a violation of state law, a misappropriation of state resources or a gross waste of public funds. If plaintiff proves any one of these three, her refusal to take part in the transaction and her report of the transaction are protected activities. There is a genuine issue of material fact that should be resolved by the trier of fact. The trial court erred in granting defendants' motion to dismiss plaintiff's claims under the Whistleblower Act, and should be reversed.

Constitutional Claims

While I concur with the majority affirming the trial court's dismissal of plaintiff's constitutional claims, I disagree with the majority's reasoning that plaintiff's constitutional claims were properly dismissed because she failed to allege misconduct on the part of defendants and thus failed to allege that her constitutional rights were violated. I concur in the court's dismissal of those claims because the Whistleblower Act creates an adequate remedy under state law and thus precludes any action at common law.

The common law creates a direct cause of action against the State for violation of state constitutional rights when there is no other adequate remedy under state law. *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). The plaintiff in *Corum* alleged that he was dismissed from his position as Dean of Learning Resources at Appalachian State University for criticizing the University's decision to relocate an historic collection of books and artifacts in such a way that it would separate the artifacts from the rest of the collection. *Id.* at 767-69, 413 S.E.2d at 281-82. In reversing the trial court's entry of summary judgment for the defendants, our Supreme Court held that the plaintiff had offered sufficient evidence to support a direct claim under N.C. Const. Art. I, § 14, the free

speech clause of this State's Declaration of Rights. *Id.* at 786, 413 S.E.2d at 292.

However, in *Swain v. Elfland*, 145 N.C. App. 383, 550 S.E.2d 530 (2001), this Court held that the plaintiff's contested case hearing for wrongful termination under N.C. Gen. Stat. § 126-34.1 and N.C. Gen. Stat. § 126-86 in the Office of Administrative Hearings, was an adequate state remedy that precluded a direct cause of action for violation of the plaintiff's right to free speech under the North Carolina Constitution. *Swain*, 145 N.C. App. at 391, 550 S.E.2d at 536. The plaintiff in *Swain*, like the plaintiff in the present case, cited *Corum* to support his cause of action. *Id. Corum*, however, predates the Whistleblower Act. The Court did not require the plaintiff's success in the administrative hearing nor did the Court require that the state remedy provide the same or more relief than that available under a direct constitutional claim. *Id.*

The present case is similar in its facts to both *Swain* and *Corum*. Indeed, were it not for the advent of the Whistleblower Act, I would conclude that plaintiff has adequately stated a direct claim under both the free speech and Exclusive Emoluments clauses of this State's Constitution. However, the Whistleblower Act, which the majority concludes does not apply to plaintiff, does constitute an adequate statutory remedy for the alleged violation of plaintiff's constitutional rights.

Plaintiff's claim under N.C. Gen. Stat. § 126-86 adequately addresses each of her constitutional claims. Because the report of state agency misconduct is a protected activity under N.C. Gen. Stat. § 126-85(a), there is an adequate statutory remedy for the violation of her free speech rights. Since reporting of misappropriations of state funds is expressly protected by N.C. Gen. Stat. § 126-84, the Whistleblower claim is an adequate state law remedy for her claim under the Exclusive Emoluments Clause. Finally, because the only form of discrimination alleged by the plaintiff is that based on her engagement in activities protected under N.C. Gen. Stat. § 126-85, her equal protection claim is also precluded by this remedy.

For this reason, the trial court's dismissal of all Helm's constitutional claims should be affirmed.

Conclusion

I concur with the majority in affirming the court's dismissal of plaintiff's constitutional claims, but only because the claims are

precluded by the adequate state law remedy provided by the Whistleblower Act, not because they are without substantive merit. I respectfully dissent from the majority's holding that plaintiff failed to state a claim under the Whistleblower Act. Therefore, I would reverse the trial court's judgment and remand the case for further consideration of plaintiff's claims under the Whistleblower Act.